FILED

August 30 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0508

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 213

UNITED TOOL RENTAL, INC. and
DELYLE LYNN PAULSEN,

       Plaintiffs and Appellants,

  v.

RIVERSIDE CONTRACTING, INC., a
Montana corporation; UNITED RENTAL
HIGHWAY TECHNOLOGIES, INC., n/k/a
HIGHWAY TECHNOLOGIES, INC.,
a Massachusetts corporation; THE STATE
OF MONTANA, MONTANA DEPARTMENT
OF TRANSPORTATION; and CARTER &
BURGESS, INC., a Texas corporation,

       Defendants and Appellees.


APPEAL FROM:    District Court of the Twentieth Judicial District,
                  In and For the County of Lake, Cause No. DV 07-288
                  Honorable Deborah Kim Christopher, Presiding Judge


COUNSEL OF RECORD:

      For Appellants:

          Brian L. Taylor, Jardine, Stephenson, Blewett & Weaver, P.C., Great
          Falls, Montana

      For Appellees:

          Tyson R. O'Connell, Peter J. Stokstad; Garlington, Lohn & Robinson,
          PLLP, Missoula, Montana (Riverside Contracting, Inc.)

          Lon J. Dale, Philip B. Condra, Giovanna M. McLaughlin; Milodragovich,
          Dale, Steinbrenner & Nygren, P.C., Missoula, Montana (Highway
          Technologies, Inc.)
          Mark S. Williams, Nicholas J. Pagnotta; Williams Law Firm, P.C.,
          Missoula, Montana (Montana Department of Transportation)

Steven Hamilton, Hall & Evans, L.L.C., Denver, Colorado (Carter & Burgess)

Submitted on Briefs    July 20, 2011

Decided:   August 30, 2011

Filed:

                              Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Following an automobile crash for which United Tool Rental, Inc. (UTR), and DeLyle Paulsen (Paulsen) admitted negligence, UTR and Paulsen sought contribution from the State of Montana Department of Transportation (DOT), Riverside Contracting, Inc. (Riverside), Highway Technologies, Inc. (Highway Technologies), and Carter & Burgess, Inc. (Carter & Burgess) (collectively "Construction Parties"). A jury in the Twentieth Judicial District Court, Lake County, determined UTR and Paulsen were entirely at fault for the crash and rejected their contribution claim. UTR and Paulsen appeal the following issues, which we have restated.

¶2      Issue One: Whether the District Court erred in excluding a post-crash memorandum prepared by the Montana Highway Patrol and evidence the DOT erected a "no left turn" sign after the crash.

¶3      Issue Two: Whether the District Court erred in allowing (1) cross-examination of Paulsen regarding his chewing tobacco use; (2) the use of Paulsen's deposition during cross-examination of Paulsen; (3) references by counsel for the Construction Parties regarding their connections to Montana; and (4) inflammatory remarks by counsel for the DOT during closing argument.

¶4      Issue Three: Whether the jury's verdict is insufficient and a new trial is warranted.

3

## BACKGROUND

¶5 On July 13, 2007, Paulsen, an employee of UTR, was driving a work truck southbound through a construction zone on Highway 93. Ahead of Paulsen, a minivan and two other vehicles were stopped at the intersection of Highway 93 and Old Highway 93, while the lead vehicle attempted to make a left-hand turn onto Old Highway 93. Paulsen rear-ended the minivan and then veered into the northbound lane and collided with a vehicle driven by Ann Marie Matt (Matt).

¶6 In the months leading up to the crash, construction barricades had been placed at the intersection of Old Highway 93 and Highway 93 to prevent vehicles from negotiating left-hand turns from southbound Highway 93 onto Old Highway 93. The barricades were removed on or around June 11, 2007. Four days after the crash, the DOT replaced the construction barricades at the intersection, citing concerns from the Montana Highway Patrol (MHP) and an increase in summer traffic.

¶7 Six days after the crash, Trooper Michael Gehl, the investigating MHP officer, authored a memorandum regarding his concerns about Highway 93. Trooper Gehl expressed concern that (1) the grade of the roadway created a substantial blind spot for motorists; (2) the limited area of roadway between guardrails prevented vehicles from avoiding collision; (3) the location of the Old Highway 93 intersection posed an imminent hazard; and (4) insufficient signage existed indicating the presence of a construction zone and a "no left turn" sign was necessary. A short time later, the DOT erected a "no left turn" sign at the intersection of Old Highway 93 and Highway 93.

4

¶8 Matt sued UTR and Paulsen to recover damages for the injuries she sustained in the crash. UTR and Paulsen then sued the Construction Parties for contribution, alleging their negligent design, construction, and maintenance of Highway 93 contributed to the crash.[1] UTR and Paulsen settled with Matt and proceeded to trial against the Construction Parties in August 2010. The matter was submitted to the jury after six days of trial. The jury returned with its verdict, finding UTR and Paulsen were one hundred percent at fault for the crash.

¶9 UTR and Paulsen appeal.

## STANDARD OF REVIEW

¶10 A district court has broad discretion in determining the admissibility of evidence. *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561. This Court will not overturn a district court's evidentiary ruling unless the district court abused its discretion. *Seltzer*, ¶ 65. A district court commits an abuse of discretion when it " 'act[s] arbitrarily without conscientious judgment or exceed[s] the bounds of reason.' " *Seltzer*, ¶ 65 (quoting *Lopez v. Josephson*, 2001 MT 133, ¶ 14, 305 Mont. 446, 30 P.3d 326). If this Court determines that a district court abused its discretion, we must next determine whether the abuse of discretion constitutes reversible error. *Seltzer*, ¶ 65. "[N]o reversible error occurs unless a substantial right of the appellant is [a]ffected, nor does reversible error occur unless the evidence in question was of such character as to have affected the outcome of the trial."

---

[1] The DOT contracted with Riverside to expand Highway 93. Riverside subcontracted a portion of the project to Highway Technologies. Carter & Burgess provided highway design and construction management services.

*Seltzer*, ¶ 65. We also review discretionary trial rulings for an abuse of discretion. *State v. Duncan*, 2008 MT 148, ¶ 37, 343 Mont. 220, 183 P.3d 111.

**DISCUSSION**

¶11    Issue One: *Whether the District Court erred in excluding a post-crash memorandum prepared by the Montana Highway Patrol and evidence the DOT erected a "no left turn" sign after the crash.*

¶12    The Construction Parties filed motions in limine to exclude Trooper Gehl's memorandum and his opinions expressed therein and evidence the DOT replaced the barricades and erected a "no left turn" sign after the crash, which the District Court granted in part and denied in part. The District Court concluded evidence that the barricades were re-erected and Trooper Gehl's testimony regarding his concerns about Highway 93 were admissible. The District Court excluded the memorandum from evidence, as well as any testimony from Trooper Gehl related to the subsequent remedial measures he recommended the DOT take, and excluded the DOT's post-crash placement of the "no left turn" sign.

¶13    On appeal, UTR and Paulsen argue the District Court abused its discretion in excluding the memorandum and evidence of the "no left turn" sign because they are admissible for impeaching the testimony of the Construction Parties' witnesses regarding the dangerousness of the intersection where the crash occurred—an exception to Montana Rule of Evidence 407's (Rule 407) bar against subsequent remedial measures. Specifically, UTR and Paulsen argue the placement of the "no left turn" sign impeaches any testimony from the Construction Parties' witnesses that the intersection was not dangerous. In addition, UTR

6

and Paulsen assert counsel for Highway Technologies "opened the door" for the introduction of the memorandum during cross-examination of Trooper Gehl.

*"No Left Turn" Sign*

¶14 Evidence of subsequent remedial measures is not admissible to prove negligence. M. R. Evid. 407. The rationale behind Rule 407 "encourage[s] remedial measures by freeing the defendant from concern that such steps might be used against him [or her] as an admission by conduct." *Johnson v. State*, 233 P.3d 1133, 1135 (Ariz. 2010) (internal quotations omitted). Although not admissible for proving negligence, evidence of subsequent remedial measures may be admissible for other purposes, such as impeachment. M. R. Evid. 407.

¶15 Courts in other jurisdictions have narrowly applied the impeachment exception, noting that "evidence of subsequent remedial measures . . . is not admissible for impeachment where the sole value of the impeachment rests on [the] same impermissible inference of prior negligence." *Herzog v. Lexington Township*, 657 N.E.2d 926, 933 (Ill. 1995). As the *Herzog* court explained:

> Allowing such evidence in these circumstances would swallow the general rule prohibiting the introduction of subsequent remedial measures and frustrate the policy considerations that support it. In every case, a defendant will dispute that his [or her] prior conduct was negligent. Once a defendant disputes his or her negligence at trial, a plaintiff could always seek to introduce evidence of subsequent remedial measures under the guise of impeachment. . . . Furthermore, contrary to the policies supporting the general rule, parties to lawsuits would be discouraged from making improvements for fear that such actions would be used against them at trial.

*Herzog*, 657 N.E.2d at 933. Accordingly, subsequent remedial measures are admissible for impeachment purposes "where the defendant goes beyond stating that the original condition

7

was safe or adequate[] and attempts to make exaggerated claims that the condition was the safest possible . . . ." *Herzog*, 657 N.E.2d at 933 (internal quotations omitted). To admit "such evidence when it does not directly impeach a witness's testimony or other evidence offered by a defendant contravenes the general rule that such evidence is inadmissible to prove negligence." *Johnson*, 233 P.3d at 1138.

¶16    This Court has not directly addressed the breadth of the impeachment exception to Rule 407. However, a review of our subsequent remedial measures jurisprudence supports a narrow interpretation of the impeachment exception as adopted by the *Herzog* and *Johnson* courts. UTR and Paulsen correctly point out this Court allowed evidence of subsequent remedial measures for impeachment purposes in *Runkle v. Burlington N.*, 188 Mont. 286, 613 P.2d 982 (1980), and *Cech v. State*, 184 Mont. 522, 604 P.2d 97 (1979). However, both cases involved defendants claiming not only that they were not negligent, but also that they had acted more than adequately or the original condition was safer. For example, in *Cech*, the defendant, despite its subsequent remedial measure of installing guardrails, claimed the presence of a recovery area was safer than the construction of guardrails and the presence of a guardrail would not have prevented the automobile crash. *Cech*, 184 Mont. at 525, 604 P.2d at 98. Similarly, the defendant in *Runkle* went beyond claiming the condition was safe by asserting the railroad intersection was not extra-hazardous. *Runkle*, 188 Mont. at 294, 613 P.2d at 987.

¶17    Narrowly applying the impeachment exception here does not conflict with our Rule 407 jurisprudence and supports the general mandate that subsequent remedial measures are

8

not admissible to prove negligence. The Construction Parties merely claimed their design, construction, and maintenance of Highway 93 were adequate. Because their defense did not go beyond denying negligence, as opposed to making exaggerated claims that their design, construction, and maintenance of Highway 93 were the safest or best, impeachment was not at issue here. The District Court did not abuse its broad discretion in excluding evidence of the post-crash placement of the "no left turn" sign.

*Trooper Gehl's Memorandum*

¶18 Because we have determined the impeachment exception to Rule 407 is not applicable here, we need not address UTR's and Paulsen's argument regarding admitting the memorandum for impeachment purposes. UTR and Paulsen conceded before trial that the memorandum was inadmissible. On appeal, they contend counsel for Highway Technologies opened the door for the memorandum's admission by asking Trooper Gehl the following question: "But during this time period of June 11 through July 13, 2007, would it be fair [to say] that you never contacted the [DOT] and said we've got a hazardous situation here, did you?"

¶19 We conclude the door was not opened. The question posed to Trooper Gehl clearly concerned his activities before the crash and demonstrated the purported hazards were not so obvious to Trooper Gehl that he voiced concerns to the DOT before the crash occurred. Further, any prejudice resulting from the questioning was harmless. *See Stevenson v. Felco Indus., Inc.*, 2009 MT 299, ¶ 44, 352 Mont. 303, 216 P.3d 763 ("[I]n order for the erroneous admission of evidence to constitute grounds for a new trial under § 25-11-102, MCA, the

9

error must be so significant to materially affect the substantial rights of the complaining party."). The District Court permitted UTR and Paulsen to ask Trooper Gehl whether he contacted the DOT after July 13, 2007, and Trooper Gehl subsequently testified he notified the DOT of a hazardous condition after July 13, 2007. In addition, the District Court permitted Trooper Gehl to testify in detail about his concerns regarding the safety of Highway 93, thereby curing any alleged error.

¶20 Issue Two: *Whether the District Court erred in allowing (1) cross-examination of Paulsen regarding his chewing tobacco use; (2) the use of Paulsen's deposition during cross-examination of Paulsen; (3) references by counsel for the Construction Parties regarding their connections to Montana; and (4) inflammatory remarks by counsel for the DOT during closing argument.*

¶21 UTR and Paulsen argue the District Court deprived them of a fair trial by allowing Construction Parties' counsel to repeatedly raise impermissible inferences, introduce facts not in evidence, and make inflammatory comments. We address each allegation separately below.

*Chewing Tobacco Use*

¶22 Highway Technologies' counsel, using his personal experiences involving chewing tobacco while driving, cross-examined Paulsen about how he chews tobacco while driving. UTR and Paulsen argue this line of questioning tainted the jurors' minds by inferring that Paulsen was preoccupied by removing chewing tobacco from a tin before the crash and prejudiced UTR and Paulsen.

10

¶23    The district court retains broad discretion regarding the scope of cross-examination. *State v. Bonamarte*, 2009 MT 243, ¶ 16, 351 Mont. 419, 213 P.3d 457.  "A witness may be cross-examined on any subject raised or fact stated on direct examination."  *Hando v. PPG Indus., Inc.*, 272 Mont. 146, 150, 900 P.2d 281, 283 (1995).  Here, Paulsen admitted he was fifty percent at fault for the crash and that his inattentive driving caused the crash.  The Construction Parties were entitled to inquire about what caused Paulsen, an admitted chewing tobacco user, to drive inattentively.  The District Court did not abuse its discretion in allowing this line of questioning.

*Use of Deposition*

¶24    During the same cross-examination of Paulsen, counsel read into evidence a portion of Paulsen's deposition testimony:

> Q:  Now when we took your deposition the second time, Mr. Paulsen, I asked you, other than yourself as being a cause, which you've admitted here in court that you were negligent and that therefore you and your employer are negligent and you and your employer are a cause, I asked you the question what were the other causes as far as you, Mr. Paulsen, were concerned for this collision.  Do you recall that testimony?
>
> .   .   .
>
> Q:  And you've admitted in prior sworn testimony yourself that the only other cause was visibility.  Isn't that true?

UTR and Paulsen assert the use of Paulsen's deposition testimony was improper and was akin to allowing the introduction of hearsay evidence, but they fail to offer any authority or real analysis in support of their claim.  "This Court has repeatedly held that it will not consider unsupported issues or arguments and is under no obligation to locate authorities or

11

formulate arguments for a party in support of positions taken on appeal." *State v. Ochadleus*, 2005 MT 88, ¶ 32, 326 Mont. 441, 110 P.3d 448. We will not address this undeveloped claim.

*References to Montana and Inflammatory Remarks*

¶25 UTR and Paulsen assert counsel for the Construction Parties improperly commented on their ties to Montana. They also assert counsel for the DOT improperly commented on the validity of UTR's claims when he likened the merit of UTR's claims to the number of days its corporate representative attended the trial.

¶26 A new trial may be granted if the misconduct of counsel was so pervasive that it prevented one of the parties from receiving a fair trial, thereby materially affecting the party's substantial rights. *Lopez*, ¶ 35 (citing § 25-11-102, MCA). A party's failure to object to alleged improper comments made by counsel precludes an appellant from raising that issue on appeal. *Barrett v. ASARCO, Inc.*, 245 Mont. 196, 205, 799 P.2d 1078, 1083 (1990).

¶27 UTR and Paulsen are barred from appealing any of the allegedly improper comments or inflammatory remarks because they failed to object to any of these alleged errors at trial.

¶28 Issue Three: *Whether the jury's verdict is insufficient and a new trial is warranted.*

¶29 On appeal, UTR and Paulsen argue they are entitled to a new trial because the jury failed to answer all of the interrogatories presented to it in the special verdict form, and the District Court failed to disclose this insufficiency to the parties before discharging the jury.

12

¶30 The jury was instructed to "answer each and every one" of the questions contained in the special verdict form. Question number one asked: "Was the [DOT] negligent?" If the jury answered no, it was instructed to enter zero percent next to the DOT in question number nine. The jury did not mark yes or no to question number one, but proceeded to question number nine and entered a zero percent next to the DOT. The remaining questions followed the same format as question number one, but substituted the different defendants. Similar to its response in question number one, the jury did not mark yes or no to the remaining questions, but proceeded to question number nine and indicated the remaining defendants were each zero percent negligent and Paulsen and UTR were one hundred percent negligent.

¶31 When the jury returned with its verdict, the District Court informed the parties as follows: "In this matter then *the special verdict form reflects that the jury has in answering the following questions proceeded to question number nine*, and in that they indicated . . . . [UTR] and [Paulsen], 100 percent [negligent]." (Emphasis added.) UTR and Paulsen did not poll the jury.

¶32 A verdict "should be given . . . a reasonable construction as will carry out the obvious intention of the jury." *Fauver v. Wilkoske*, 123 Mont. 228, 231, 211 P.2d 420, 422 (1949). Accordingly, a verdict is not defective as long as it is intelligible and clearly manifests the intent of the jury. *Fauver,* 123 Mont. at 231, 211 P.2d at 422. "The time for correcting an insufficient verdict is at the time it is announced in open court and before it has been

13

accepted and ordered filed for [the] record and before the jury has been discharged from the case." *Fauver*, 123 Mont. at 236-37, 211 P.2d at 425.

¶33 The present verdict is not defective. The jury clearly and obviously intended to find UTR and Paulsen one hundred percent negligent, as manifested by its apportionment of liability in question number nine. Further, contrary to UTR's and Paulsen's assertions, the District Court informed them the jury proceeded to question number nine in completing the special verdict form. Despite receiving this notice, UTR and Paulsen did not object or poll the jury. Therefore, they waived any challenge to the verdict on appeal. *Fauver*, 123 Mont. at 236-37, 211 P.2d at 425; *see also Sandman v. Farmers Ins. Exch.*, 1998 MT 286, ¶ 23, 291 Mont. 456, 969 P.2d 277 ("A district court will not be put in error for a ruling or procedure in which the appellant acquiesced or participated, or to which the appellant made no objection.") (internal quotations omitted).

## CONCLUSION

¶34 For the foregoing reasons, we affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE