[Cite as *Paulozzi v. Iannotti*, 2016-Ohio-5511.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 103381

---

**MARY JO PAULOZZI**

PLAINTIFF-APPELLANT/
CROSS-APPELLEE

vs.

**JOSEPH IANNOTTI, ET AL.**

DEFENDANTS-APPELLEES/
CROSS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-829885

**BEFORE:** Laster Mays, J., Jones, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** August 25, 2016

-i-

**ATTORNEY FOR APPELLANT/CROSS-APPELLEE**

Alan J. Rapoport
25700 Science Park Drive, Suite 270
Beachwood, Ohio 44122


**ATTORNEYS FOR APPELLEES/CROSS-APPELLANTS**

Steven G. Janik
Audrey K. Bentz
George H. Carr
Janik L.L.P.
9200 South Hills Boulevard, Suite 300
Cleveland, Ohio 44147

ANITA LASTER MAYS, J.:

{¶1} Plaintiff-appellant, Mary Jo Paulozzi ("Paulozzi"), appeals from the trial court's judgment finding that she failed to prove negligence on the part of defendants-appellees Joseph and Karen Iannotti (the "Iannottis") for damage to her real property. The Iannottis cross-appeal, challenging the trial court's assessment, in part, of costs to them. We affirm the trial court's findings on both the Paulozzi and Iannottis' appeals.

## I. BACKGROUND AND FACTS

{¶2} In 1989, the city of Strongsville ("city") approved plans relating to the construction of a home located on an elevated lot containing a downhill slope (the "Elevated Lot"). The city required installation of a shallow drainage ditch known as a swale to facilitate downhill water flow into a storm sewer located via easement along the western boundary of the Elevated Lot, emptying into a storm sewer drain at the southwest corner.

{¶3} In 1997, Paulozzi purchased a lot to the west of, and adjacent to, the Elevated Lot (the "Paulozzi Lot"). The elevation of the Paulozzi Lot was 10 feet to 11 feet lower than the Elevated Lot and the Elevated Lot's swale, and storm sewer easement abutted the Paulozzi Lot's eastern property line. Paulozzi was required to construct a retaining wall along the eastern boundary of her lot.

{¶4} In 2003, Harry and Sally Matlock (the "Matlocks") purchased the property immediately adjacent to and north of the Paulozzi Lot (the "Matlock Lot"), also abutting the Elevated Lot to the east. There was a 10 foot to 11 foot elevation difference between the lots. The city required that the Matlocks construct a retaining wall along their eastern boundary.

**{¶5}** In 2004, the Iannottis purchased the Elevated Lot (now the "Iannottis' Lot"). In 2010, the Iannottis had landscaping services performed on the western portion of their lot that included the removal of vine, and brush and the installation of a line of shrubs paralleling the swale location.

**{¶6}** It is asserted that, shortly after the landscaping, Paulozzi and the Matlocks began experiencing flooding of their properties. They argued that the landscaping negatively impacted the water flow and allegedly caused damage to their retaining walls.

**{¶7}** In August 2011, surveyor John Hejduk ("Hejduk") was hired by the Iannottis' to survey the Iannottis' Lot ("2011 Survey") as the result of Paulozzi's complaint to the city that topographical changes resulting from the landscaping caused flooding to her property. The city reviewed the topographical maps prepared by Hejduk as part of the 2011 Survey and city engineers conducted their own inspections. The city concluded that the swale was in place and that the landscaping did not impact or redirect the water flow.

**{¶8}** In 2012, the Matlocks sued the Iannottis for the damage to their retaining wall. Paulozzi intervened in 2013 asserting damage to her wall. The Iannottis retained surveyor Hejduk as their expert. Significant discovery was conducted including a second survey of the property by Hejduk personally attended by Paulozzi that included both sides of the property line ("2013 Survey"). Paulozzi did not have a survey.

**{¶9}** In December 2013, after significant discovery was conducted and while *Daubert*[1] and summary judgment motions were pending, Paulozzi's complaint was voluntarily dismissed without prejudice. The Iannottis and Matlocks settled and dismissed their claims in January

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (adopted by Ohio to determine the reliability of an expert's opinion).

2014. The parties agreed to modify the swale as part of the settlement terms. Hejduk was hired to create a "Swale Modification Plan" depicting actual and proposed dimensions for city permitting purposes (the "Plan"). Hejduk prepared the Plan in June 2014, using his 2013 swale measurements. The Iannottis implemented the Plan and modified the swale in July 2014. Paulozzi secured a copy of the Plan via a public records request.

{¶10} Paulozzi filed suit July 16, 2014, alleging damage to her retaining wall exceeding $166,000. She claimed that the swale was inadequate and that the Iannottis negligently altered or failed to maintain the swale. The Iannottis counterclaimed for abuse of process, frivolous litigation, spoliation, malicious prosecution, and trespass.

{¶11} The parties engaged in the exchange of documents and conducted depositions. The Iannottis identified Hejduk as their trial expert and maps and drawings of survey measurements were produced. Paulozzi did not depose Hejduk or subpoena his files or working documents relating to the swale measurements or modification.

{¶12} Paulozzi produced engineers, hydrologists who had inspected the swale during the Matlock case, and a number of documents and photographs, to demonstrate that the swale, or a portion thereof, was not present throughout the original swale area.

{¶13} Paulozzi's witness Robert Klaiber ("Klaiber"), a civil engineer and professional surveyor, was the Strongsville city engineer during the 1997 site plan and swale approval period, and later served as an expert in the Matlock case as an independent contractor consultant. Klaiber examined the swale several times between 2011 and 2014, and stated portions of the swale were still present but he did not observe a swale in the 10-foot easement area behind the Paulozzi Lot. A number of exhibits were introduced into evidence to demonstrate that a portion

of the swale was not evident and the swale length was not long enough. Based on the evidence of the absence of a swale, Paulozzi sought a directed verdict that the trial court denied.

{¶14}  Hejduk testified as the Iannottis' expert witness. Hejduk was hired by the Iannottis in 2011, to survey the property lines and to perform a topographical survey on the west side of the Iannottis' Lot. This survey included a comparison of swale dimensions to the 1989 original site plan for building the residence on the Iannottis' Lot but did not contain a measurement of the depth of the swale. At the time of the 2011 Survey, Hejduk observed a measurable swale along the entire property line.

{¶15}  The Hejduk surveys admitted on direct examination did not include swale-depth measurements. On cross-examination, Paulozzi proffered the Plan (identified as exhibit No. 84 at the trial). Paulozzi argues that the Plan was offered to demonstrate that the swale-depth near the northern end of the Paulozzi retaining wall had decreased from 1.4 feet in 1997 to 0.1 feet in 2013. The trial court refused admission on the ground that it served as evidence of subsequent remedial measures and also excluded the Plan during questioning of other defense witnesses. The trial court did entertain a proffer for the record.

{¶16} Hejduk testified that he did not recall the specific depth measurements contained in the Plan and did not bring his files because they had not been requested. However, Hejduk did state that the elevation indications on the admitted survey exhibit demonstrated there was a slope and a "measurable swale":

> [Defense Counsel]:   Okay. And the fact that you didn't particularly note that at this point in the swale it was 1.1 feet deep or at a different point in the swale it was point 9 feet deep or at a different point in the swale it was point 5 feet deep does not mean you did not see a swale?
>
> [Hejduk]:   Correct.

(Tr. 704.)

{¶17} After the jury determined that Paulozzi failed to prove negligence by a preponderance of the evidence, she sought a new trial that was denied by the trial court without opinion. The court also did not award attorney fees to the Iannottis pursuant to Civ.R. 54(D). This appeal and cross-appeal ensued.

## II. ASSIGNMENT AND CROSS-ASSIGNMENT OF ERROR

{¶18} Paulozzi offers a single assignment of error, that the trial court erred in failing to admit relevant and material evidence of negligence, specifically the Plan. The crux of Paulozzi's position is that the Plan did not demonstrate that actual remedial measures were taken or that an actual compromise of a disputed claim was effected. She asserts that the exclusion constitutes plain error. We disagree.

{¶19} Iannotti's sole assigned error on the cross-appeal is the trial court's failure to award costs pursuant to Civ.R. 54(D). We affirm the trial court's findings on the appeal and cross-appeal.

### A. Paulozzi's Appeal

#### 1. Standard of Review

{¶20} The admission or exclusion of relevant evidence rests within the discretion of the trial court. *State v. Robb*, 88 Ohio St.3d 59, 68, 723 N.E.2d 1019 (2000). An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent a clear and prejudicial abuse of discretion. *Donovan v. Donovan*, 110 Ohio App.3d 615, 620, 674 N.E.2d 1252 (12th Dist.1996); *State v. Robinson*, 8th Dist. Cuyahoga No. 99917, 2014-Ohio-2973, ¶ 23. An abuse of discretion standard "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## 2. Law and Analysis

**{¶21}** "Error predicated on an evidentiary ruling does not warrant reversal of the trial court's judgment unless the court's actions were inconsistent with substantial justice and affected the substantial rights of the parties. Evid.R. 103(A)." *Perry v. Univ. Hosps.*, 8th Dist. Cuyahoga No. 83034, 2004-Ohio-4098, ¶ 25.

**{¶22}** Paulozzi elaborated on the grounds supporting admission of the Plan during the evidentiary proffer for the record:

> Paulozzi's Counsel: Yes. I want to show a proffer what the record — the item purports to show. This is called a swale modification. It's a plan that was developed. It is not necessarily the plan that was implemented in this case and nor does it mention specifically the Matlocks at all. Matlock's name does not appear on this. This was prepared for the Iannottis. It specifies that all work shall remain on the Iannotti property. This item does refer to an extension of a swale to the north which was part of the Matlock settlement. And I understand per the previous rulings of this Court we were not about to reference this as being part of the settlement, nor in fact even reference this as being an extension of the swale.
>
> What we did intend to reference is that, as the witness testified today, he did take elevations of the middle of the swale. They do not appear on any of the documents that [defense counsel] has offered. They do appear on this document. And this document specifically shows those elevations that he was referring to that are very material in determining what the depth of the swale is. Specifically at a location that's adjacent to the mound as I read the map, there is an elevation of 1117 but there is a reference point of 1116.9 which would indicate that the depth of the swale at that point was point 1 feet in the vicinity of the landscaped mound, which is the whole intention in this case that we made that the mound was — that the swale was graded by the landscapers. Because this is not consistent with the information that was on the survey that was done in 1997, which is also consistent with our contention that the swale was modified since 1997.
>
> I believe that the Court is fundamentally correct in stating that evidence of a subsequent repair is not admissible under the evidence rules. This is not evidence of a subsequent repair. The evidence rule specifically provides that evidence can be used for other purposes. Even though it may be inadmissible for some purposes, it's admissible for others. In this case it's admissible as absolutely important proof of physical dimensions, facts at issue in the case. It's also introducible as impeachment testimony. Dr. Iannotti has testified that there were no changes made in the swale during the time that he has owned his property.

Whereas this shows a specific difference between the original plan and the measurements at that time that were done by a surveyor who had no axe to grind, was merely measuring physical distances.

In addition to that, there are other compensations in here as well. This plan shows existing elevation, also shows proposed elevations. Now, by showing proposed elevations, the engineer, according to the surveyor, is rendering an opinion on the subject of what the swale ought to be.

Now, once again, this is not evidence of a repair. This is a plan. The plan might have been done, might not have been done. [Defense counsel] has introduced a number of plans in this case that were never done that were in fact rejected by the city.

So this does not specifically reference anything that was actually done and doesn't necessarily require proof that it was actually done. It does in fact, though, give the jury some information and guidance on what was there after the landscaping was done in 2010 and what reasonably could have or should have been done thereafter to make a proper swale. That's my proffer, your Honor.

(Tr. 710-713.)

**{¶23}** We begin our analysis with Evid.R. 407:

Rule 407. Subsequent remedial measures when, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

*Id.*

**{¶24}** This court discussed the purpose and policy underlying Evid.R. 407 in *Hill v. W.*

*Res. Catering, Ltd.*, 8th Dist. Cuyahoga No. 93930, 2010-Ohio-2896:

Evid.R. 407 prohibits the admission of evidence of subsequent remedial measures to prove negligence or culpable conduct. It provides: "[w]hen, after an injury or harm allegedly caused by an event are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event."

*Id.*

{¶25} In examining Evid.R. 407, the Ohio Supreme Court in *McFarland v. Bruno Mach. Corp.*, 68 Ohio St.3d 305, 1994-Ohio-62, 626 N.E.2d 659, noted that:

> The policy reasons for Evid.R. 407 have been stated as resting on two grounds. The first justification for the rule is that evidence of subsequent remedial measures is thought to have minimal or nonexistent probative value in establishing negligence. Taking subsequent remedial action is not an admission of negligence. The rationale is that the injury may have been caused by reason of mere accident or through the plaintiff's contributory negligence. The second explanation for excluding evidence under this rule is based on the social policy of encouraging repairs or corrections. The argument behind this policy reason is that a defendant would be less likely to take subsequent remedial measures if the repairs or corrections could be used as evidence against the defendant at trial.

(Emphasis sic.) *Id*. at 307-308; *Hill* at ¶ 16-17.

{¶26} The rule also contemplates an equitable evidentiary balance: "Evid.R. 407, however, does not prohibit testimony as to remedial measures when offered to show ownership or control, the feasibility of precautionary measures or impeachment purposes." *Elder v. Summit Mfg*., 8th Dist. Cuyahoga No. 70797, 1997 Ohio App. LEXIS 1078,*12 (Mar. 20, 1997), citing *Felden v. Ashland Chem. Co.*, 91 Ohio App.3d 48, 60-61, 631 N.E.2d 689 (8th Dist. 1993).

{¶27} Paulozzi argues that the Plan is the smoking gun in this case because it proves that the improper swale dimensions were the cause of the damage to the north end of Paulozzi's retaining wall and that defense testimony that the swale had not been modified was inaccurate. In other words, Paulozzi asserts that the Plan reflecting the subsequent remedial measure demonstrates that the Iannottis were negligent, which is exactly the result Evid.R. 407 was designed to prevent.

{¶28} In addition, Paulozzi asserts that the Plan does not fall within the purview of the rule because the applicable test is "whether the evidence demonstrates that measures were

actually 'taken.'"  Paulozzi has failed to cite pertinent case law in support of this premise and this court is not persuaded that her position has merit. *See*, *e.g.*, *Swaisgood v. Puder*, 6th Dist. Erie No. E-06-033, 2007-Ohio-307 (finding that an interoffice email advocating alternative placement of a utility pole to prevent future accidents was evidence of remedial measures and inadmissible pursuant to Evid.R. 407); *Bishop v. Nelson Ledges Quarry Park, Ltd.*, 11th Dist. Portage No. 2004-P-0008, 2005-Ohio-2656 (holding that an expert report referencing safety improvement suggestions issued by the county to the defendant park after the accident in question was not admissible under Evid.R. 407).

{¶29}  The Plan is entitled "Swale Modification Plan for Joseph and Karen Iannotti." It is a site plan of the Iannottis' Lot containing a June 13, 2014 date of preparation, the parcel number, and sketch of buildings on the Iannottis' Lot, and various measurements and depictions of topography, easements, and improvements.  The Plan contains the legend, "exist. elev./prop. elev.," and an indication to "extend swale."  It further provides that "ALL WORK SHALL REMAIN ON THE IANNOTTI PROPERTY.  ELEVATIONS FOR THE PROPOSED SWALE ARE THE BOTTOM OF THE SWALE.  PLACE RIVER ROCK IN THE SWALE AS NEEDED TO MAINTAIN 3:1 SIDE SLOPES ON THE SWALE ABOVE THE RIVER ROCK."

{¶30}  The content of the Plan could reasonably be deemed by the trial court to contain sufficient indicia of remedial purpose and activity regarding the swale and to be more prejudicial than probative in this case.  The title of the document clearly provides indication of modifications to the swale and other remedial work to be performed pursuant to the Plan.

{¶31}  This court has previously stated that "Evid.R. 407, 408, and 409 all forbid the introduction of certain evidence that might lead to the 'inference' of liability."  *Paul v.*

*Metrohealth St. Luke's Med. Ctr.*, 8th Dist. Cuyahoga No. 71195, 1998 Ohio App. LEXIS 4964,*41 (Oct. 22, 1998). We cannot say that the trial court abused its discretion in excluding the Plan on this ground.

{¶32} Paulozzi additionally argues that the Plan was admissible for impeachment purposes, an exception to Evid.R. 407. Instructive here is the Illinois Supreme Court's admonition regarding the impeachment exception to the exclusion of subsequent remedial measures:

> The flaw in the appellate court's reasoning is that the sole value of the impeachment rests on the impermissible inference that the subsequent measures are admissible evidence of prior negligence. Defendant's witnesses testified only that the single sign present on the roadway was adequate. In order for the evidence of the subsequent signs to be considered impeaching, we must accept the premise that the conduct of placing additional signs contradicts the witnesses' testimony and supports the view that the original condition was unsafe. However, this premise directly contradicts the assumptions that support the general rule regarding subsequent remedial measures. *Just as evidence of subsequent remedial measures is not considered sufficiently probative to be admissible to prove prior negligence, that evidence is not admissible for impeachment where the sole value of the impeachment rests on that same impermissible inference of prior negligence.*
>
> Allowing such evidence in these circumstances would swallow the general rule prohibiting the introduction of subsequent remedial measures and frustrate the policy considerations that support it. In every case, a defendant will dispute that his prior conduct was negligent. Once a defendant disputes his or her negligence at trial, a plaintiff could always seek to introduce evidence of subsequent remedial measures under the guise of impeachment. Thus, the general rule of excluding evidence of subsequent remedial measures would be swallowed by the impeachment exception. Furthermore, contrary to the policies supporting the general rule, parties to lawsuits would be discouraged from making improvements for fear that such actions would be used against them at trial.

(Emphasis added.) *Herzog v. Lexington Twp.*, 167 Ill.2d 288, 301-302, 212 Ill.Dec. 581, 657 N.E.2d 926 (1995); *see also Carson v. CSX Transp., Inc.*, 400 S.C. 221, 235, 734 S.E.2d 148 (2012); citing *Herzog* and *United Tool Rental, Inc. v. Riverside Contr., Inc.*, 361 Mont. 493, 2011 MT 213, 260 P.3d 156.

**{¶33}** Paulozzi's witnesses testified that there was an observable reduction in the swale-depth in a limited area. The defense witnesses testified that the 2010 landscaping activities did not involve or include modifications to the swale and they did not observe changes in the area where the work was conducted. The Plan data did not serve to impeach this testimony nor did it conflict with Hejduk's statement that there was evidence of a "measurable swale." Further, "even if the proffered [evidence] had been relevant, it was, at best, cumulative given the other testimony elicited at trial and thus, its probative value was substantially outweighed by its prejudicial effect." *Warkoczeski v. Speedway SuperAmerica*, *L.L.C.*, 3d Dist. Auglaize No. 2-09-26, 2010-Ohio-2518, ¶ 42.

**{¶34}** We also find that, pursuant to Evid.R. 403, the risk of prejudice was greater than the probative value. "[E]vidence is not admissible under Evid.R. 403(A) only if it presents a danger of unfair prejudice that substantially outweighs its probative value." *Haynal v. Nordonia Hills City School Dist.*, 9th Dist. Summit No. 25242, 2011-Ohio-3191, ¶ 11.

**{¶35}** The crux of appellant's suit is that the Plan setting forth the actual measures and implemented to change the swale dimensions is evidence of negligence. As with the purpose of the bar to introduction of subsequent remedial measures under Evid.R. 407, introduction of the evidence could easily cause a jury to assume that the modification and settlement equated to an admission of guilt.

**{¶36}** The record demonstrates that Paulozzi had ample opportunity to secure evidence of the swale dimensions in this case. There were municipal records from 1997 documenting the swale dimension requirements, municipal permits approving the installation, documents in appellant's possession from the initial lawsuit and those accumulated since the refiling of the suit.

**{¶37}** Pivotal here, appellant was on notice for several years that the Iannottis had hired Hejduk to assist them and were also using him as an expert in this case. Paulozzi actually attended and observed Hejduk's inspection and survey in 2013. In spite of these facts, Paulozzi failed to depose Hejduk regarding his findings, measurements, working papers, or other information.

**{¶38}** "The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined." Evid.R. 102. Allowing the introduction of evidence designed to demonstrate that appellees must be culpable or else there would not have been a remedial action taken thwarts this purpose.

**{¶39}** As this court stated in *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 8th Dist. Cuyahoga No. 69523, 1998 Ohio App. LEXIS 3628 (Aug. 6, 1998):

> To determine whether an error in the admission of evidence warrants reversal of a verdict, the error must either affect a substantial right of a party or be found to have caused a substantial injustice. *Petti v. Perna* (1993), 86 Ohio App.3d 508, 514, 621 N.E.2d 580. To determine whether a substantial right of a party has been affected, a reviewing court must ascertain whether the jury would have reached the same decision had the error not occurred.

*Id*. at *5.

**{¶40}** The record is replete with documents, deposition testimony, exhibits, and transcripts of testimony by numerous witnesses at the trial. Paulozzi had the alleged smoking gun in her possession prior to trial, yet took no steps to engage in discovery to ensure that evidence was placed before the jury. Clearly the jury was not convinced that appellant's argument was supported by the evidence and there has been no substantive demonstration here that the exclusion of the Plan substantially impacted Paulozzi's rights and would have resulted in a decision in her favor.

**{¶41}** We find that the trial court properly excluded the Plan. The trial court's order is affirmed.

## B. Iannottis' Cross-Appeal

**{¶42}** The Iannottis argue that the trial court erred in failing to assess costs in their favor. We affirm the trial court's finding.

### 1. Standard of Review

**{¶43}** A trial court has broad discretion to assess costs, and the court's ruling will not be reversed absent an abuse of that discretion. *2115-2121 Ontario Bldg., L.L.C. v. Anter*, 8th Dist. Cuyahoga Nos. 98255 and 98296, 2013-Ohio-2993, ¶ 1. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

### 2. Law and Analysis

**{¶44}** Civ.R. 54(D) provides that "[e]xcept when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." The Ohio Supreme Court's "interpretation of Civ.R. 54(D) is that the phrase 'unless the court otherwise directs' grants the court discretion to order that the prevailing party bear all or part of his or her own costs." (Footnote omitted.) *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 555, 597 N.E.2d 153 (1992). The court also stated that it differed from the lower court's decision in that "we do not believe that such phrase empowers the court to award costs to a non-prevailing party." *Id.* Thus, we examine which party is the prevailing party in this case.

**{¶45}** Polling the jury for the record after the verdict, the transcript provides:

The Court: Did the plaintiff prove by a preponderance of the evidence that the defendant failed to use reasonable care, created a risk of foreseeable harm to plaintiffs? The answer is in the negative, no.

&ast; &ast; &ast;

The Court: [D]id the defendant prove by the preponderance of the evidence that the plaintiff trespassed against the defendant, the answer is in the negative no.

&ast; &ast; &ast;

THE COURT: Obviously based upon these responses the Court will enter judgment in favor of the defendant.

(Tr. 1001 and 1002.)

**{¶46}** The trial court then clarified that "[b]ased upon the interrogatories I will enter judgment for the defendant as it relates to the claim and for the plaintiff as relates to the trespass." (Tr. 1004.) Thus, the record reflects that neither party, or both parties depending on perspective, prevailed on its claims. From either perspective, the trial court's entry reflecting that each party will bear its own costs does not constitute an abuse of the trial court's discretion.

**{¶47}** The cross-appellants' assigned error is overruled. The trial court's order is affirmed. The trial court's judgment as to costs on appellees' cross-appeal is also affirmed.

## III. CONCLUSION

**{¶48}** The trial court's judgment on appellant's direct appeal is affirmed and its judgment on appellees' cross-appeal is also affirmed.

It is ordered that the parties bear their own costs herein taxed.

The court finds there were reasonable grounds for these appeals.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

LARRY A. JONES, SR., A.J., and
MARY J. BOYLE, J., CONCUR