FILED

12/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0308

DA 16-0308

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 316

KERRY S. MAIER and MARTIN H. RAUSCH,

     Plaintiffs and Appellants,

  v.

ERIN WILSON,

     Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District,<br>In and For the County of Missoula, Cause No. DV-14-285<br>Honorable John W. Larson, Presiding Judge |

COUNSEL OF RECORD:

     For Appellant:

          Sarah M. Lockwood, Bryan C. Tipp, Tipp, Coburn, Schandelson, P.C.,
          Missoula, Montana

     For Appellee:

          G. Patrick HagEstad, Tim E. Dailey, Milodragovich, Dale
          & Steinbrenner, P.C., Missoula, Montana

               Submitted on Briefs: August 30, 2017

                       Decided: December 28, 2017

Filed:

_____
                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Kerry Maier (Maier) sued Erin Wilson (Wilson) after a vehicle-pedestrian collision in Missoula, Montana.  Maier appeals from a judgment in the Fourth Judicial District Court, Missoula County, following a jury trial.  We affirm in part, reverse in part, and remand for further proceedings.

¶2     We restate the issues on appeal as follows:

*Issue One:  Did the District Court err in denying Plaintiff's motion for summary judgment regarding negligence per se?*

*Issue Two:  Did the District Court abuse its discretion in responding to a written question submitted by the jury during deliberations?*

*Issue Three:  Did the District Court abuse its discretion by denying Plaintiff's counsel the opportunity to cross-examine Bridget Smith regarding her prior inconsistent statements?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     This case arises from a vehicle-pedestrian collision on April 9, 2013, in Missoula, Montana.  Wilson was driving east on Sixth Street around 8:00 a.m.  As she approached the intersection of Sixth Avenue and Helen Avenue, Wilson was blinded by the sun's glare on her windshield.  Wilson testified that she put down her visor to reduce the sun's glare.  Further, Wilson testified that she slowed down once her vision was impeded.  Lastly, Wilson testified that she had made a lane change prior to passing through the intersection of Sixth and Helen.

¶4     Maier had parked on Helen Avenue and was walking towards her job at Curry Health Center.  Maier usually crossed Sixth Avenue at the unmarked crosswalk adjacent

to Helen Avenue. Maier testified that she looked for oncoming traffic but only saw a car a fair distance away and believed she could cross safely. Maier testified that she walked more than halfway across Sixth Street before she struck by Wilson's vehicle. Maier's body was hurled a considerable distance into the bike lane. Maier suffered serious injuries from the collision, including ten fractures, an ACL tear, a concussion, and internal injuries to her bladder.

¶5 Officers responded to the scene. Officer Kaneff processed the scene and took measurements from where Maier's body landed to the unmarked crosswalk. Additionally, officers took statements from several eyewitnesses, including Bridget Smith (Smith). Smith was at the intersection of Sixth and Helen attempting to cross Sixth street at the time of the collision. Smith was the only eyewitness to testify at trial.

¶6 Maier filed suit against Wilson alleging negligence. Maier filed a motion for partial summary judgment arguing, based on an accident reconstructionist and the deposition of Wilson, she was entitled to summary judgment on her negligence per se claim because she was within the unmarked crosswalk. Wilson opposed the motion, arguing Maier failed to meet her burden of showing no dispute of fact existed. The District Court concluded a genuine dispute of material fact existed concerning whether Maier was in the unmarked crosswalk, which precluded summary judgment.

¶7 Shortly before trial, the District Court held several evidentiary hearings regarding the scope of the witnesses' testimony. On March 14, 2016, during a pretrial hearing, the District Court specifically ordered that the police report would not be admitted. On March 16, 2016, the District Court issued a pretrial order acknowledging "[p]laintiffs

specifically objected to Officer Kaneff testifying about eyewitness statements included in the officer's report that constitute hearsay." Based on the objection and in accordance with M. R. Evid. 803(8)(i), the District Court determined the officers could not testify as regarding eyewitnesses' accounts. Therefore, the District Court ordered that "the officers' lay testimony will be limited to their observations and assessments made at the scene and/or other measurements that the officers conducted as part of their accident investigation." Further, to ensure inadmissible hearsay would not be introduced to the jury, the District Court ordered "[p]rior to taking the officers' trial testimony, the Court will conduct a brief in camera colloquy with counsel regarding the officers' proposed testimony." Lastly, the District Court ordered that "the parties will have an opportunity to cross-examine eyewitnesses who will testify at trial, and such eyewitnesses' testimony is strictly limited to their personal qualitative observations of what they actually saw or heard at or near the time of accident."

¶8 The case proceeded to trial on March 18, 2016. After Maier rested her case-in-chief, Wilson called Smith as her first witness. Smith was the only non-party eyewitness to the collision called to testify. On cross-examination, Maier's counsel sought to impeach Smith with prior inconsistent statements she made to officers.

¶9 The testimony and objection at issue went as follows:

Q [by Maier's counsel, Mr. Tipp]: Notwithstanding that you did give a statement to the police on --

THE COURT: You're done there. Next question. Next area.

MR. TIPP: Your Honor, can I --

4

THE COURT: You're done. You're done there.

MR. TIPP: Your Honor, can I be heard?

THE COURT: No.

MR. TIPP: Your Honor, I have --

¶10 At this point the District Court excused the jury and the following discussion took place outside of the presence of the jury. The District Court explained to Maier's counsel that before referencing any prior statements by a nonparty to this jury, counsel should have asked for a break. Maier's counsel proceeded to make an oral offer of proof as to Smith's prior inconsistent statements and their admissibility under M. R. Evid. 613. Specifically, Maier's counsel wished to question Smith on her prior inconsistent statements relating to: the speed of Wilson's vehicle; when Wilson's vehicle made a lane change; and whether Wilson's vehicle passed before or after Smith proceeded through the intersection. Based on these inconsistencies, Maier's counsel also expressed concern about Wilson's expert who relied on Smith's statements as a basis for his opinion.

¶11 The District Court determined that Maier's counsel could not question Smith about any prior inconsistent statements. Maier's counsel then inquired about the scope of Smith's prior statements and what exactly he could ask regarding Smith's observations and recollection of Wilson's vehicle. The following discussion took place outside the presence of the jury:

> MR. TIPP: I -- I don't get to ask her what she observed regarding the white Santa Fe [Wilson's vehicle].
>
> THE COURT: She's -- you can ask her again what she saw one time. You can effectively redo the question that Mr. Dailey [Wilson's counsel] did.

5

MR. TIPP: I don't -- I'm not allowed to cross-examine her, Your Honor?

THE COURT: You're -- you're just playing games now.

MR. TIPP: No I'm not.

THE COURT: I've given you—I've given you direction to stay out of the prior statements. I've told you that you can ask what she saw of the white Santa Fe.

¶12 Maier's counsel sought further clarification from the District Court on what exactly he could ask Smith about her observations of the white Santa Fe, and the District Court stated: "I'll allow the question as: What did you observe as to the white Santa Fe." Once the jury returned, Maier's counsel obeyed the District Court's order and did not cross-examine Smith about her prior inconsistent statements. Maier's counsel simply asked Smith about what she observed as to the white Santa Fe.

¶13 On March 23, 2016, Maier filed a written offer of proof regarding the District Court's ruling on Smith's cross-examination. On March 23, 2016, the case was submitted to the jury for deliberations. During deliberations, the jury submitted the following question:

> Regarding Missoula City Ordinance 10.44.040 Is the final sentence, "once the pedestrian has entered the roadway, the privilege of the right-of-way belongs to the pedestrian" . . . contingent on the prior sentence re: entering at marked or unmarked crosswalk? Or does it stand alone?

Counsel for both parties appeared in front of the District Court to discuss the response. Plaintiff's counsel objected to the following response provided by the District Court:

> In response to your question concerning Missoula City Ordinance §10.44.040. The entire ordinance is to be read as applying only to pedestrians in marked or unmarked crosswalks.

6

For pedestrians crossing at points **other than** marked or within a marked crosswalk, Montana Code Annotated §61-8-503 states:

(1) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

(3) Between adjacent intersections at which traffic control signals are in operation pedestrians shall not cross at any place except in a marked crosswalk.

¶14 On March 24, 2016, the jury returned a defense verdict finding Wilson not negligent in the collision.

**STANDARD OF REVIEW**

¶15 We review a district court's grant of summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. Under M. R. Civ. P. 56(c), summary judgment will be granted if the moving party can show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200. "We view the evidence in the light most favorable to the party opposing summary judgment, and we draw all reasonable inferences in favor of the party opposing summary judgment." *Stipe v. First Interstate Bank - Polson*, 2008 MT 239, ¶ 10, 344 Mont. 435, 188 P.3d 1063.

¶16 "We review for an abuse of discretion whether the district court correctly instructed the jury." *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904. "[W]hile a district court has broad discretion to formulate

7

jury instructions, that discretion is limited by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law." *Peterson*, ¶ 22 (quoting *Tarlton v. Kaufman*, 2008 MT 462, ¶ 19, 348 Mont. 178, 199 P.3d 263) (internal quotations omitted). "[T]he party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case." *Tarlton*, ¶ 19 (quoting *Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 74, 337 Mont. 411, 162 P.3d 106).

¶17     "A district court's evidentiary rulings are reviewed for an abuse of discretion." *Beehler v. E. Radiological Assocs., P.C.*, 2012 MT 260, ¶ 17, 367 Mont. 21, 289 P.3d 131.     A district court possesses broad discretion to determine the admissibility of evidence. *Malcolm v. Evenflo Co.*, 2009 MT 285, ¶ 29, 352 Mont. 325, 217 P.3d 514. "Notwithstanding this deferential standard, however, judicial discretion must be guided by the rules and principles of law; thus, our standard of review is plenary to the extent that a discretionary ruling is based on a conclusion of law." *State v. Price*, 2006 MT 79, ¶ 17, 331 Mont. 502, 134 P.3d 45. In this circumstance, we must determine whether the court correctly interpreted the law. *Price*, ¶ 17. "We will not reverse the district court unless the error be 'of such character to have affected the result.'" *Howard v. St. James Cmty. Hosp.*, 2006 MT 23 ¶ 17, 331 Mont. 60, 129 P.3d 126 (quoting *Payne v. Knutson*, 2004 MT 271, ¶ 20, 323 Mont. 165, 99 P.3d 200.

**DISCUSSION**

¶18 *Issue One: Did the District Court err in denying Plaintiff's motion for summary judgment regarding negligence per se?*

¶19 Maier argues the District Court improperly denied Maier's motion for summary judgment on negligence per se. Maier argues that Wilson's admissions and the accident reconstructionist showed there was no genuine issue of material fact that Maier was within the unmarked crosswalk when she was hit. Further, Maier maintains that Wilson's supporting evidence to argue there was a genuine issue of material fact was inadmissible and did not comport with M. R. Civ. P. 56.

¶20 Wilson counters that the Maier's motion for summary judgment failed to meet its burden of establishing no genuine issue of material fact. Wilson contends the evidence considered by the District Court in denying Maier's motion for summary judgment was admissible under M. R. Civ. P. 56. Further, Wilson argues that the District Court's conclusion that "[e]vidence before the Court shows that there are differing accounts of where Plaintiff Maier was located at the time of the collision, creating a genuine issue of material fact" was correct. We agree.

¶21 Negligence per se usually arises from a statutory violation. *Giambra v. Kelsey*, 2007 MT 158, ¶ 46, 338 Mont. 19, 162 P.3d 134. A plaintiff in a negligence per se action must establish the following five elements: (1) the defendant violated the statute; (2) the statute was enacted to protect a specific class of people; (3) the plaintiff is a member of that class; (4) the plaintiff's injury is the sort that the statute was enacted to prevent; and (5) the statute was intended to regulate members of the defendant's class. *VanLuchene v.*

9

*State*, 244 Mont. 397, 401, 797 P.2d 932, 935 (1990). The statutes relied upon in this case as the basis for establishing negligence per se are § 61-8-504, MCA, and Missoula Municipal Code § 10.44.040. The statutes are predicated upon a pedestrian crossing the roadway within a marked or unmarked crosswalk.

¶22 As a threshold matter, it is well-established we will not address an issue raised for the first time on appeal, nor will we address a party's change in legal theory. *Becker v. Rosebud Operating Servs.*, 2008 MT 285, ¶ 17, 345 Mont. 368, 191 P.3d 435. Maier's arguments for summary judgment were based solely on the assertion that Maier was within the unmarked crosswalk. For the first time on appeal, Maier raises the argument that negligence per se should "apply irrespective of whether a pedestrian is in the crosswalk or not." Therefore, we will not address Maier's argument that was not raised in the District Court.

¶23 Nevertheless, the District Court properly denied Maier's motion for summary judgment because there was a clear dispute of fact whether Maier was within the unmarked crosswalk at the time of the collision. Maier asserted in her motion for summary judgment that she was thrown "22-40 feet when she was hit, placing her squarely within the crosswalk at the time of impact." However, Maier acknowledged that the "measurement from the crosswalk [to Maier's body] was, generally, forty (40) feet." Clearly, if Maier was thrown less than 40 feet, Maier was not crossing the street within the unmarked crosswalk. Thus, Maier failed to meet her burden of showing no disputed issue of fact existed. Viewing the evidence in the light most favorable to the non-moving

10

party, the District Court properly denied Maier's motion for summary judgment because Maier's location at the time of the collision was a disputed issue of material fact.

¶24 *Issue Two: Did the District Court abuse its discretion in responding to a written question submitted by the jury during deliberations?*

¶25 Maier argues the District Court erred when it provided an inappropriate response to a jury question during deliberations. Maier contends the response was inappropriate because it was non-responsive, referred to an entirely different instruction, and improperly emphasized qualifying language. Further, Maier maintains that the response caused prejudice because the jury returned a defense verdict within ninety minutes of receiving the District Court's response.

¶26 Wilson counters that the District Court did not err in its response to the jury question because the response did not insert a new theory or defense. Wilson argues the District Court's response was proper because it answered the jury's question and was a correct statement of the law. Moreover, Wilson contends that even if the District Court's response was in err, Maier fails to show prejudice.

¶27 We decline to look to the extra-jurisdictional cases cited by Maier because there is ample Montana authority to resolve this issue before us. A district court abuses its discretion when its answer to a jury question inserts a new theory or defense into the case. *Simonson v. White*, 220 Mont. 14, 21, 713 P.2d 983, 987 (1986). However, Maier does not argue that the District Court's response inserted a new theory or defense into the case. Therefore, *Simonson* is not applicable in this case.

11

¶28 We have declined to conclude a district court abused its discretion when its answer to a jury question either referenced or directed the jury to review jury instructions already before them, so long as the jury instructions were adequate and correctly stated the law. For example, in *State v. Hawkins*, the jury submitted four written questions to the district court regarding the mental state of willful, deliberate, and premeditated in a murder trial. 165 Mont. 456, 458, 529 P.2d 1377, 1378 (1974). The district court's response told the jury that the answers to the jury's "questions are contained in the instructions given." *Hawkins*, 165 Mont. at 459, 529 P.2d at 1379. We determined the district court's refusal to answer a question already answered in the instructions is not error if "the instructions already given are adequate, correctly state the law, and fully advise the jury on the procedures it is to follow in its deliberation." *Hawkins*, 165 Mont. at 460, 529 P.2d at 1379.

¶29 Most recently, in *State v. Dunfee*, the jury posed the following question to the district court during deliberations: "whether the terms purposely and knowingly applied to the seriousness of the injuries or just to the actions of the defendant." 2005 MT 147, ¶ 21, 327 Mont. 335, 114 P.3d 217. The district court responded by referring the jury to two jury instructions that "answered the jury's question, correctly stated the law, and fully advised the jury on the procedures to follow in its deliberation. *Dunfee*, ¶ 24. Thus, this Court concluded the district court did not err. *Dunfee*, ¶ 24.

¶30 Further, this Court has held that it may be appropriate for a district court to respond to a jury's question beyond a simple "yes" or "no" answer. In *Semenza v. Leitzke*, the jury presented the following question: "Does the law state how long a

12

contract (oral) is legal and binding?" 232 Mont. 15, 17, 754 P.2d 509, 510 (1988). The district court responded with: "There is no statute that defines how long an oral contract is binding. It depends on the provisions of the contract itself, or, in the absence of such provisions, it depends on the intent of the parties." *Semenza*, 232 Mont. at 17, 754 P.2d at 510-11. The plaintiffs argued the district court should have responded with a "yes" or "no." *Semenza*, 232 Mont. at 17, 754 P.2d at 511. We disagreed, concluding the district court did not err because it properly answered the jury's question and did not improperly insert a new theory or defense into the case. *Semenza*, 232 Mont. at 17, 754 P.2d at 511.

¶31 Here, the District Court's answer contains two sections: (1) the response to the jury's question; and (2) the reference to § 61-8-503, MCA. First, the District Court directly answered the jury's question in the first paragraph, stating: "In response to your question concerning Missoula City Ordinance § 10.44.040. The entire ordinance is to be read as applying only to pedestrians in marked or unmarked crosswalks." The District Court's answer is similar to that in *Semenza*, where we rejected the notion that a district court needed to give a "yes" or "no" answer. Here, the District Court clearly and correctly answered the jury's question. Thus, Maier's argument that the District Court's answer was non-responsive is without merit.

¶32 Second, the District Court referred the jury to § 61-8-503, MCA, for the law on pedestrians crossing at points other than marked or unmarked crosswalks. In this case, we are not presented with a district court directing the jury to an adequate jury instruction that specifically answers the jury's question. *Hawkins*, 165 Mont. at 460, 529 P.2d at 1379; *Dunfee*, ¶ 24. Instead, the District Court referred the jury to a statute contained

13

within a separate jury instruction that did not directly answer the jury's question. However, it was not error for the District Court to direct the jury to § 61-8-503, MCA, because it was already presented to the jury as a jury instruction and correctly stated the law.

¶33 Even if the District Court erred in directing the jury to § 61-8-503, MCA, Maier failed to show the District Court's error prejudiced her. "[T]he party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case." *Tarlton*, ¶ 19. Maier fails to prove she was prejudiced by the reference to § 61-8-503, MCA. Maier agrees the reference to § 61-8-503, MCA, is a correct statement of the law and was already provided to the jury as a jury instruction. Further, § 61-8-503, MCA, is directly relevant to the ultimate question in this case: whether the pedestrian had the right-of-way. Although we would caution district courts from unnecessarily expanding upon a jury's question; we do not find that Maier was prejudiced when the District Court included within its answer an adequate jury instruction that correctly stated the law. Therefore, the jury's question was adequately answered by the District Court and did not prejudice Maier.

¶34 *Issue Three: Did the District Court abuse its discretion in denying Plaintiff's counsel the opportunity to cross-examine Bridget Smith regarding her prior inconsistent statements?*

¶35 Maier argues the District Court abused its discretion by denying her the opportunity to impeach Smith based on her prior inconsistent statements. Maier contends that the District Court should have allowed Maier to confront Smith regarding her

14

inconsistent statements to lay foundation for impeachment. Further, Maier maintains that her substantial rights were affected by the District Court's preclusion of cross-examination regarding Smith's inconsistent statements.

¶36 Wilson argues that the issue is barred by mootness, waiver and judicial estoppel. Conversely, Wilson counters that Maier's argument fails because it is not a purely evidentiary issue, but rather results from Maier's own violation of the court order granting Maier's motion in limine. Even so, Wilson maintains that if the District Court did err in denying Maier the opportunity to confront Smith with her prior inconsistent statements, it was not reversible error.

¶37 At the outset, we reject Wilson's arguments that the issue is barred by mootness, waiver and judicial estoppel. Maier set forth possible remedies in her written offer of proof to remedy the error of the District Court not allowing cross-examination regarding Smith's inconsistent statements. However, after review of the record, we cannot agree that a proper remedy was granted. The District Court's remedy was to limit the testimony of Wilson's expert to only Smith's testimony stated in court.[1] This was not sufficient to cure the error of limiting cross-examination of Smith about her observations because Smith's testimony remained uncontradicted.

¶38 In cross-examining Smith, Maier's counsel sought to impeach her by use of prior inconsistent statements, which is permitted under M. R. Evid. 613:

---

[1] This Court notes that Wilson's counsel voluntarily limited their expert's testimony to not include any calculation based on Smith's testimony; however, such concession did not mean Wilson's expert could not rely on Smith's testimony in giving his ultimate opinion.

(a) In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

(b) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

¶39 Proper application of Rule 613 to this case dictates that Maier's counsel should have been afforded the opportunity to elicit testimony from Smith regarding her prior inconsistent statements. Notwithstanding the limitations set forth by the District Court regarding the police report and officer's testimony regarding eyewitnesses, once Smith took the stand it was within Maier's right to cross-examine Smith about her inconsistent statements. Thus, Rule 613 entitled Maier's counsel to cross-examine Smith about her prior inconsistent statements that would have provided her an opportunity to explain or deny.

¶40 Further, Maier's motion in limine did not limit her ability to cross-examine Smith regarding her prior inconsistent statements. A motion in limine may properly restrict impeachment evidence if it is explicitly stated. *State v. Lias*, 218 Mont. 124, 126-27, 706 P.2d 500, 501-02 (1985). In *Lias*, the motion in limine explicitly prohibited impeachment through statements made by the defendant in a justice court proceeding. *Lias*, 218 Mont. at 126, 706 P.2d at 501. Despite the motion in limine, testimony and rebuttal testimony was elicited about the statements made in justice court. *Lias*, 218 Mont. at 126, 706 P.2d at 502. This Court found the motion in limine violation an error; however, concluded the substantial rights of the defendant were not affected. *Lias*, 218

16

Mont. at 126-27, 706 P.2d at 502. Here, the motion in limine is distinguishable because it did not prevent eliciting impeachment testimony about Smith's prior statements.

¶41 The District Court's pretrial motion stated Maier's counsel "will have an opportunity to cross-examine eyewitnesses who will testify at trial, and such eyewitnesses' testimony is strictly limited to their personal qualitative observations of what they actually saw or heard at or near the time of accident." This limited eyewitnesses' testimony to only their actual observation; they could not opine whether Maier was within the unmarked crosswalk. Smith's prior statements directly described her personal qualitative observations at or near the time of the accident. Further, the motion in limine only limited officer testimony about the eyewitnesses' statements because it would constitute hearsay. Based on these rulings, Maier's counsel correctly attempted to cross-examine Smith about the inconsistencies between her trial testimony and what she told officers and investigators at a more contemporaneous time. It was an abuse of discretion for the District Court to rule that Maier's counsel could not impeach Smith through cross-examination because Maier was entitled under Rule 613 to cross-examine Smith about her prior inconsistent statements and the motion in limine did not restrict such cross-examination.

¶42 We will not reverse a judgment based on an erroneous evidentiary ruling unless a substantial right of the party is affected. M. R. Evid. 103. A substantial right of a party is not affected unless the challenged evidence would have affected the result of the case. *In re Estate of Edwards*, 2017 MT 93, ¶ 50, 387 Mont. 274, 393 P.3d 639.

17

Cross-examination is a substantial right and may not be unduly restricted. *McGonigle v. Prudential Ins. Co.*, 100 Mont. 203, 218, 46 P.2d 687, 694 (1935).

¶43 The District Court's ruling regarding Rule 613 affected a substantial right of Maier. Smith's testimony provided the jury with the only account of the collision by a non-party eyewitness. Due to the District Court's ruling, Smith's testimony went uncontroverted even though she had previously asserted differently. Further, Smith's testimony directly correlated to whether Maier was within the unmarked crosswalk. Thus, allowing Maier to cross-examine Smith with impeachment evidence was necessary to provide Maier with a fair trial. In the face of this evidence, we determine that the District Court's ruling to exclude cross-examination of Smith regarding her prior inconsistent statements affected the outcome of the case. Therefore, we conclude that the District Court's error was so significant that it materially affected Maier's right to a fair trial.

## CONCLUSION

¶44 We hold the District Court properly denied Maier's motion for summary judgement because a clear dispute of fact existed concerning whether Maier was within the unmarked crosswalk. We conclude the District Court did not err when it expanded upon the jury's question by including § 61-8-503, MCA, in its response. Furthermore, Maier failed to show how giving a proper jury instruction to the jury prejudiced her. Lastly, we hold the District Court abused its discretion in denying Maier an opportunity to cross-examine Smith about her inconsistent statements. Further, denying Maier the

18

opportunity to cross-examine affected a substantial right.  Accordingly, the verdict should be set aside and a new trial granted.

¶45    Affirmed in part, reversed in part, and remanded for further proceeding in accordance with this Opinion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Laurie McKinnon concurring in part and dissenting in part.

¶46    I concur with the Court's resolution of Issues One and Two.  However, with respect to Issue Three, any limitation the District Court placed upon Maier's cross-examination of Smith resulted from Maier's violation of a court order and was not the consequence of any evidentiary error made by the trial court.  To the extent this Court concludes otherwise, I dissent.

¶47    Maier violated a court order issued pursuant to her own request.  Prior to trial, Maier requested that the court preclude any references by the officers to witness statements contained within the police reports because the statements were hearsay.  The District Court entered a written pretrial order indicating that "the parties will have an opportunity to cross examine eyewitnesses who will testify at trial, and *such eyewitnesses' testimony is strictly limited to their personal qualitative observations of what they actually saw or heard at or near the time of accident*."  (Emphasis added.)

19

Maier did not object to the court's language or ask for clarification regarding potential use of the statements as impeachment evidence. Maier received what she asked for in her motion in limine; that is, the eyewitness statements were considered inadmissible. The court further ruled that "[p]rior to and throughout trial, . . . the parties needed to approach the bench before attempting to introduce any disputed evidence regarding the objected to eyewitness statements in the officer reports." The District Court recognized the difficulty in separating the hearsay contained within the police report from the officer's own observations and findings. The court wanted the opportunity to determine if any statements were admissible outside the presence of the jury.

¶48 It is undisputed that Maier did not follow the court's order when Maier's counsel preceded to question Smith about her hearsay statements contained in the police report without first committing the matter to the court's inquiry. Rather than request to be heard outside the presence of the jury, Maier's counsel asked Smith in front of the jury about the hearsay statements she gave to police. The court directed counsel to move on. Following counsel's persistence with the line of questioning, the court dismissed the jury because counsel had just "disobeyed the Court's multiple rulings which required Court approval before counsel could examine eyewitnesses on the previously precluded area of the officer report." The District Court determined that counsel should not be allowed to use Smith's statements contained in the police report to refresh her recollection as to (1) the speed of Wilson's vehicle and (2) whether Wilson had changed lanes immediately before the intersection. The admissibility of the statements contained in the police report was highly disputed. It is, thus, my view that the court did not abuse its discretion on

20

insisting that trial counsel abide by the previously imposed requirement that the particular line of questioning first be submitted to the court for consideration. The requirement that counsel first submit the matter to the court was reasonable.

¶49 Even assuming that there was error in not allowing Maier to use the police report to refresh Smith's recollection of the events and to contradict Smith's testimony, the error was not of such character as to have affected the outcome of the trial. *See, e.g., United Tool Rental, Inc. v. Riverside Contracting, Inc.*, 2011 MT 213, ¶ 10, 361 Mont. 493, 260 P.3d 156 (explaining that an evidentiary error is not reversible unless the appellant's substantial right is affected or the evidence in question was of such a character as to have affected the outcome of the trial). Maier asks this Court to reverse a 10-2 defense verdict on the basis that statements in the police report would potentially contradict Smith's trial testimony. Maier's own investigator, however, interviewed Smith and recorded her statement consistent with how she testified at trial. In my view, any error in precluding Maier from attempting to "impeach" Smith, given the totality of the record, did not affect the outcome of the trial.

¶50 The Court is mistaken in considering the issue as purely evidentiary. Here, the District Court, through its pretrial orders, sought to maintain control over a highly disputed aspect of the proceedings. In doing so, the District Court wanted to ensure the integrity of its evidentiary rulings and, concomitantly, the adequacy of a record for appellate review of those specific evidentiary issues. When Maier's counsel chose to bypass the District Court by disregarding the pretrial order, the District Court had discretion to ensure that the proceedings were conducted fairly and in compliance with

21

reasonable orders it had previously made. In my view, any alleged error arising from Maier's inability to potentially impeach Smith, in light of all the facts and testimony produced at trial, is not of such a character as to have affected the trial's outcome.

¶51 Accordingly, I dissent from the Court's conclusion that these proceedings should be remanded for a new trial as a result of the court's decision to limit Maier's impeachment of Smith.

/S/ LAURIE McKINNON