FILED

04/28/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0487

DA 25-0487

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 89

ZACHARY MURRAY,

Plaintiff and Appellant,

v.

TAYLOR STEINMETZ,

Defendant and Appellee,

and

EASTERSEALS-GOODWILL NORTHERN ROCKY
MOUNTAINS, INC. a/k/a GOODWILL STORE,

Defendant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-16-2021-1212A
Honorable Peter Ohman, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Richard A. Ramler, Jorden S. Ramler, Ramler Law Office, P.C., Belgrade,
Montana

For Appellee:

Nicholas J. Pagnotta, Alexander T. Tsomaya, Williams Law Firm, P.C.,
Missoula, Montana

Submitted on Briefs: February 18, 2026
Decided: April 28, 2026

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Zachary Murray appeals an Eighteenth Judicial District Court jury verdict finding Murray 65% negligent when his motorcycle collided with a vehicle driven by Taylor Steinmetz as she pulled out from a parking lot onto a public roadway. We restate the following issues on appeal:

> 1. *Did the District Court err in finding that disputed facts precluded it from concluding on summary judgment that Steinmetz was negligent per se?*
>
> 2. *Did the District Court abuse its discretion when it allowed a Bozeman Crash Investigator to opine that Murray's carelessness was a direct cause of the accident?*
>
> 3. *Did the District Court abuse its discretion when it refused to admit videos taken weeks after the crash intended to demonstrate traffic conditions and flow at the crash site?*
>
> 4. *Did the District Court manifestly abuse its discretion when it denied Murray's motion for a new trial under M. R. Civ. P. 59(a)?*

We affirm on all issues.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On June 25, 2021, Taylor Steinmetz had just left the Goodwill store on Simmental Way in Bozeman, Montana. Simmental Way is a public street with a double-yellow line indicating a no passing zone.

2



*Figure 1: Plaintiff's exhibit depicting Goodwill's exit onto Simmental Way oriented with North on the top of the image.*

Steinmetz began to pull out of the parking lot, intending to cross the northbound lane to make a left turn into the southbound lane. Several vehicles were stopped in the northbound lane in line to make donations at Goodwill. The line of vehicles obstructed Steinmetz's sightline to the south and her left. As she pulled out slowly, Zachary Murray—driving his motorcycle northbound—collided with Steinmetz in the northbound lane. Murray was thrown from the motorcycle by the impact. He sustained numerous injuries, including a traumatic brain injury, and has no recollection of the crash.

¶3    Murray filed a complaint against Steinmetz in November 2021 and later added Easterseals-Goodwill Northern Rocky Mountain as a defendant. Murray alleged that Steinmetz was negligent because she violated traffic regulations when she failed to yield

3

the right-of-way as she exited the Goodwill parking lot. Steinmetz denied liability and raised the affirmative defense of comparative negligence.[1]

¶4 Murray moved for partial summary judgment, arguing that Steinmetz was negligent per se because she undisputably violated § 61-8-343, MCA. The court denied the motion, determining that there remained several genuine issues of material fact. The case went before a Bozeman jury beginning February 18, 2025. The jury found both parties negligent, attributing 35% to Steinmetz and 65% to Murray. The court entered judgment for Steinmetz in March 2025.

¶5 Murray subsequently filed a M. R. Civ. P. 59(a) motion for new trial. Murray challenged (1) the court's denial of his partial summary judgment motion; (2) the testimony of crash investigator Michael Williams opining on Murray's driving as a contributing cause of the accident; (3) defense expert Mark Erickson's undisclosed rebuttal opinion on Plaintiff's expert's use of the "vault method"; (4) the introduction of standards for "lane filtering" despite an order in limine suppressing that discussion as irrelevant; (5) the exclusion of Murray's father's videos of the accident site filmed weeks after the collision; (6) the inclusion of language in Jury Instruction 12, part of which Murray objected to as non-relevant; and (7) that together these alleged defects in the proceedings, though perhaps individually harmless, were cumulatively prejudicial. Finding no errors, the District Court denied Murray's motion for a new trial. Murray now appeals.

---

[1] Goodwill moved for, and was granted, summary judgment that it did not owe Murray a duty of care. Murray did not appeal this ruling.

4

**STANDARDS OF REVIEW**

¶6      This Court reviews summary judgment rulings de novo. *Kipfinger v. Great Falls Ob. & Gyn. Assocs.*, 2023 MT 44, ¶ 13, 411 Mont. 269, 525 P.3d 1183. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). A genuine issue of material fact exists only when the record "manifests a non-speculative . . . fact that is materially inconsistent with proof of an essential element of an asserted claim or defense at issue." *Kipfinger*, ¶ 13 (citation omitted). In a motion for summary judgment, a court must view the record in the light most favorable to the non-moving party. *Kipfinger*, ¶ 14.

¶7      We review a district court's determination on most evidentiary matters, including the admissibility of expert testimony, for an abuse of discretion. *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561; *McClue v. Safeco Ins. Co. of Ill.*, 2015 MT 222, ¶ 14, 380 Mont. 204, 354 P.3d 604. A district court's ruling on the admission of demonstrative evidence is reviewed for manifest abuse of discretion. *Henricksen v. State*, 2004 MT 20, ¶ 83, 319 Mont. 307, 84 P.3d 38. District courts are granted broad discretion in overseeing the admissibility of trial evidence. *Seltzer*, ¶ 65. An abuse of discretion occurs when a district court "acts arbitrarily without employment of conscientious judgment, or if it exceeds the bounds of reason and substantial injustice results." *Evans v. Scanson*, 2017 MT 157, ¶ 10, 388 Mont. 69, 396 P.3d 1284 (citation omitted).

¶8      We will not disturb a district court's M. R. Civ. P. 59 ruling on the grounds provided in § 25-11-102, MCA, absent a manifest abuse of discretion. *Steffensmier v. Huebner*,

2018 MT 173, ¶ 8, 392 Mont. 80, 422 P.3d 95; *Willing v. Quebedeaux*, 2009 MT 102, ¶ 19, 350 Mont. 119, 204 P.3d 1248. A manifest abuse of discretion is "obvious, evident, or unmistakable . . . ." *Steffensmier*, ¶ 8 (citation omitted).

**DISCUSSION**

¶9   *1. Did the District Court err in finding that disputed facts precluded it from concluding on summary judgment that Steinmetz was negligent per se?*

¶10   The grant of summary judgment is "an extreme remedy and should never be substituted for trial" if there exists a dispute of material fact. *Clark v. Eagle Sys., Inc.*, 279 Mont. 279, 283, 972 P.2d 995, 997 (1996) (citations omitted). Negligence claims are frequently unsuitable for summary judgment because they often involve disputed questions of fact. *Fahrnow v. E-5 Oilfield Serv.*, 2025 MT 220, ¶ 12, 424 Mont. 229, 577 P.3d 1107. Summary judgment on issues of negligence may be appropriate only "when reasonable minds cannot draw different conclusions from the evidence." *Fahrnow*, ¶ 12 (internal quotations omitted; citation omitted).

¶11   A plaintiff may establish a negligence per se claim by proof of a statutory violation. *Giambra v. Kelsey*, 2007 MT 158, ¶ 46, 338 Mont. 19, 162 P.3d 134. Once the plaintiff demonstrates violation of a statute, a defendant's breach of duty is established as a matter of law. *Giambra*, ¶ 46 (citation omitted). This contrasts with common-law negligence, where duty is a question of law and breach generally is a question of fact. *Giambra*, ¶ 46 (citation omitted).

¶12   Murray claims that Steinmetz was negligent per se for violating § 61-8-343, MCA. It provides that "[t]he operator of a vehicle about to enter or cross a roadway from a private

6

road, driveway, alley, or public approach ramp shall yield the right-of-way to all vehicles approaching on the roadway." It is undisputed that Steinmetz drove a vehicle entering a roadway from a private driveway and that Murray drove an approaching vehicle on that roadway. Murray acknowledges that causation and the defense of comparative negligence remained subject to the factfinder's determination. Murray contends, however, that because § 61-8-343, MCA, unambiguously mandates that Steinmetz yield the right-of-way to Murray, Steinmetz violated the statute when she failed to do so and collided with Murray. Steinmetz thus was negligent as a matter of law. Steinmetz responds that Murray's speed, failure to maintain sufficient visibility, and general disregard of traffic conditions created material questions of fact that precluded entry of partial summary judgment.

¶13    In the summary judgment record, the parties presented the following facts. As Steinmetz exited the Goodwill parking lot, several vehicles were stopped to her left, waiting to enter the lot. Steinmetz believed those stopped vehicles were part of the line to make donations at Goodwill that had "backed up into traffic," which a Goodwill employee explained was common at that time. Williams, a Bozeman crash investigator dispatched to the scene, observed that the stopped vehicles were not parked but simultaneously occupied the lane as Murray drove his motorcycle past them. Steinmetz swore to exiting the parking lot slowly and checking for traffic to both her right and left. She admitted that a motorcycle could have passed the stopped vehicles without crossing the centerline. She explained, however, that her sightline was obstructed by the line of cars, and she did not

7

see Murray until he collided with her vehicle. She had not put her foot on the gas yet before the motorcycle hit her vehicle. Murray's expert Steven Harbinson and Steinmetz's expert Mark Erickson agreed that the stopped vehicles obstructed Steinmetz's sightline to the left.

¶14 Witnesses to the collision occupying the stopped vehicles described themselves as waiting in line for a while before observing a truck and Murray—traveling close behind the truck—drive past the stopped vehicles. One described Steinmetz's vehicle as "inching out." Steinmetz did not recall the truck in front of Murray but remembered a truck traveling southbound in the opposite direction of Murray. Expert Harbinson determined that Murray was traveling between sixteen to twenty miles per hour, and expert Erickson judged his speed to be between thirty-seven to forty miles per hour. One of the witnesses to the accident believed from the sound of Murray's motorcycle that he was accelerating as he passed the line of vehicles and thought he was traveling too fast given the circumstances of the intersection.

¶15 Montana's right-of-way statutes accord vehicles "the status of favored or disfavored . . . to facilitate the orderly movement" of traffic. *Tonner v. Cirian*, 2012 MT 314, ¶ 11, 367 Mont. 487, 291 P.3d 1182 (internal quotations omitted; citation omitted); *Roe v. Kornder-Owen*, 282 Mont. 287, 291, 937 P.2d 39, 42 (1997). A favored vehicle is granted the right-of-way, and a disfavored vehicle has a duty to yield. *Spinler v. Allen*, 1999 MT 160, ¶ 20, 295 Mont. 139, 983 P.2d 348 (citing *Roe*, 282 Mont. at 291, 937 P.2d at 42). Though a favored driver has a right to assume that the disfavored vehicle will yield when the law requires, a favored driver cannot ignore obvious dangers and rely blindly on

8

the right-of-way. *Spinler*, ¶¶ 20-21 (citing *Roe*, 282 Mont. at 291-92, 937 P.2d at 42). The privilege of right-of-way is "not inflexible and absolute." *Flynn v. Helena Cab & Bus Co.*, 94 Mont. 204, 213, 21 P.2d 1105, 1108 (1933). A favored driver still must maintain "a proper lookout and use reasonable care" under the circumstances. *Spinler*, ¶ 21 (citing *Roe*, 282 Mont. at 291-92, 937 P.2d at 42).

¶16      *Flynn v. Helena Cab & Bus Co.* involved a city ordinance granting the right-of-way to vehicles approaching from the right at uncontrolled intersections. *Flynn*, 94 Mont. at 212, 21 P.2d at 1107. The defendant in *Flynn* challenged the district court's rejection of the proposed jury instruction that the ordinance imposed an absolute duty to yield; instead, the district court instructed that a traveler had a duty to yield, when under the circumstances, "a reasonably prudent man would do so." *Flynn*, 94 Mont. at 212, 21 P.2d at 1107. We upheld the jury instruction and concluded that the ordinance granting right-of-way did not require the disfavored vehicle to "yield to the right of way under all circumstances and conditions" but depended "to some extent upon the relative positions of the vehicles." *Flynn*, 94 Mont. at 214, 21 P.2d at 1108. We explained that if a disfavored driver came to an intersection and "[found] no one approaching it upon the other street within such distance as reasonable to indicate danger of interference or collision," the disfavored driver was under "no obligation to stop or to wait, but may proceed to use such crossing as a matter of right." *Flynn*, 94 Mont. at 214, 21 P.2d at 1108 (citations omitted).

¶17      In *Spinler v. Allen*, we articulated a similar principle. 1999 MT 160, 295 Mont. 139, 983 P.2d 348. There, the district court denied Spinler's motion for partial summary

9

judgment, which argued that because Allen was the disfavored vehicle under § 61-8-341(1), MCA, Allen violated her duty to yield and was negligent as a matter of law. *Spinler*, ¶¶ 10-11.  This Court concluded that Spinler failed to provide evidence that their vehicles' relative positions were so close that it created a duty for Allen to yield.  *Spinler*, ¶ 25; *compare Roe*, 282 Mont. at 289-92, 937 P.2d at 41-42 (granting summary judgment when undisputed facts showed that the plaintiff had a duty to yield when she observed the defendant one-half block away from the intersection but nonetheless decided to enter the intersection).

¶18    Applying *Spinler*, we stated in *Tonner v. Cirian* that summary judgment is "not appropriate in an intersection collision case when the parties dispute material facts with regard to the disfavored driver's failure to yield the right-of-way."  *Tonner*, ¶ 14 (citing *Spinler*, ¶¶ 22-26).  In *Tonner*, the defendant moved for summary judgment, contending that the plaintiff had "an absolute statutory duty to yield the right of way to [the defendant] . . . ."  *Tonner*, ¶ 4 (internal quotations omitted).  In an affidavit, the plaintiff swore that she had looked both ways and was able to see a quarter to half a block in the direction from which the defendant approached but observed no vehicles on the intersecting street.  *Tonner*, ¶ 15.  We held that it could not be "determined that Tonner's entry into the uncontrolled intersection constituted negligence as a matter of law such that the issue whether Cirian maintained an adequate lookout was immaterial."  *Tonner*, ¶ 15 (citing *Spinler*, ¶¶ 21-25); *see also Contreras v. Fitzgerald*, 2002 MT 208, ¶ 22, 311 Mont.

10

257, 54 P.3d 983 (holding that summary judgment was improper when facts about "what occurred immediately preceding the accident" were uncertain).

¶19 Murray suggests that this case is distinguishable from *Flynn*, *Contereras*, and *Tonner* because those cases involved statutory language that required vehicles to yield when vehicles were "close enough to constitute an immediate hazard." *See* §§ 61-8-339, -341, MCA. He asserts that § 61-8-343, MCA, rigidly requires vehicles entering a public roadway from a driveway to yield "to all vehicles approaching the roadway," without consideration of distance or hazard. He argues that the duty to yield in *Spinler* also is dissimilar because the collision involved two vehicles at an intersection of two public streets—not the entry of a vehicle from a private driveway onto a public street. *See* § 61-8-102(2)(k), MCA (defining intersection).

¶20 It is undisputed that Steinmetz's sightline was obstructed by the line of vehicles that she believed were occupying the lane of travel as they waited to enter the Goodwill parking lot. She swore to checking both right and left and moving slowly as she entered Simmental Way. But other material facts immediately preceding the collision were uncertain when Murray moved for partial summary judgment. The relative positions of his and Steinmetz's vehicles as Steinmetz entered Simmental Way remained in dispute. His speed also was in dispute, as was the fact that he was following closely behind a truck, further obscuring his visibility. It was unclear whether other vehicles had driven past the stopped line of vehicles and whether Steinmetz was aware of that fact.

¶21 Reasonable minds could draw several different conclusions from these facts. Whether Murray maintained a proper lookout and used reasonable care when driving through a congested stretch of roadway are material to understanding whether Steinmetz breached her duty to yield the right-of-way. *Tonner*, ¶ 15. The record revealed disputed questions of material fact about the vehicles' relative positions; whether Steinmetz, using reasonable care, could see Murray approaching in time to avoid the crash; and whether Murray was traveling at a reasonable rate of speed and in a reasonable manner when overtaking the stopped vehicles. On the summary judgment record, the District Court properly concluded that § 61-8-343, MCA, did not require partial judgment as a matter of law that Steinmetz was negligent for violating a statutory duty.

¶22 *2. Did the District Court abuse its discretion when it allowed a Bozeman Crash Investigator to opine that Murray's carelessness was a direct cause of the accident?*

¶23 A district court is given "broad discretion in ruling on the admissibility of expert testimony"; this Court will not disturb the trial court's ruling absent an abuse of discretion. *State v. Villanueva*, 2021 MT 277, ¶ 24, 406 Mont. 149, 497 P.3d 586. Under the Montana Rules of Evidence, expert testimony in the "form of an opinion or otherwise" is admissible when the expert's "scientific, technical, or other specialized knowledge will assist the trier of fact," and the witness is qualified "by knowledge, skill, experience, training, or education." M. R. Evid. 702. Rule 702 "implicitly requires a foundation showing that the expert has special training or education and adequate knowledge on which to base an opinion." *Hulse v. Mont. Dep't of Justice*, 1998 MT 108, ¶ 48, 289 Mont. 1, 961 P.2d 75, *cited in Wheaton v. Bradford*, 2013 MT 121, ¶ 16, 370 Mont. 93, 300 P.3d 1162; *see also*

12

*Cottrell v. Burlington N. R.R. Co.*, 261 Mont. 296, 301, 863 P.2d 381, 386 (1993). A district court should construe the Rules of Evidence liberally to admit all relevant expert testimony. *McClue*, ¶ 23.

¶24 To find an expert reliable, it must be determined that (1) the expert's field is reliable, (2) the expert is qualified, and (3) the "qualified expert reliably applied the reliable field to the facts." *McClue*, ¶ 16 (quoting *State v. Clifford*, 2005 MT 219, ¶ 28, 328 Mont. 300, 121 P.3d 489). If the court concludes that proper foundation has been laid, the expert is qualified, and the expert's field is reliable, then the "testimony based on the results from that field is admissible." *Clifford*, ¶ 28; *Hulse*, ¶ 48. Once the first two factors are satisfied, whether the expert reliably applied the field to the facts is a question for the factfinder. *Beehler v. E. Radiological Assocs., P.C.*, 2012 MT 260, ¶ 35, 367 Mont. 21, 289 P.3d 131 (citing *Harris v. Hanson*, 2009 MT 13, ¶ 36, 349 Mont. 29, 201 P.3d 151); *McClue*, ¶ 16; *Clifford*, ¶ 28. The proper method of challenging "shaky" but admissible evidence is through "vigorous cross-examination, presentation of contrary evidence, and careful [jury] instructions on the burden of proof." *McClue*, ¶ 23 (citing *Clifford*, ¶ 28).

¶25 Murray listed Williams in his expert witness disclosure, stating in part that he expected Williams to testify to the "cause/causes of the crash." Before trial, however, Murray moved in limine to exclude for lack of factual foundation Williams's opinion on Murray's driving. Supporting his motion, Murray noted that when Williams was asked at his deposition whether Murray crossed the center line, he answered, "I have an opinion, but I don't have any proof." The District Court denied Murray's motion, concluding that

13

it was premature and that Murray needed to lodge his objections based on Williams's trial testimony. Murray called Williams in his case-in-chief to explain what he did at the crash scene. Murray's counsel also established that Williams was not an accident reconstruction expert and could not opine on the vehicles' respective speeds. Over Murray's objection, when asked on cross-examination what caused the accident, Williams testified, "In my opinion in the investigation, I determined that the motorcycle was passing vehicles—going around the vehicles more in a careless manner, in which [sic], in my opinion, was a direct cause of the crash." Williams agreed on redirect that Steinmetz pulling out from the driveway was a contributing factor and acknowledged that his investigation did not determine the manner in which Murray passed the other drivers.

¶26 Murray contends that crash investigator Williams lacked the proper factual foundation to testify that Murray was driving carelessly. Murray criticizes Williams's investigation of the scene as cursory and inadequate to form an opinion on Murray's driving. Steinmetz counters that Williams testified properly as a law enforcement crash investigator and that precedent plainly allowed Williams to offer an opinion on what caused the collision.

¶27 Williams is the civilian crash investigator for the Bozeman Police Department (BPD) who responded to the crash. Though Williams is not a sworn police officer with the BPD, he brings over twenty years of experience as a military police officer, a Montana highway patrolman, and a crash investigator for BPD. During his nearly six-year tenure with BPD, Williams has investigated an estimated 5,000 to 6,000 accidents. Upon

14

responding to this accident, Williams inspected the scene; interviewed witnesses, including Steinmetz; took photographs; and asked Sergeant Musson to go to the scene later that day to note roadway markings.

¶28 Murray cites *State v. Jay* extensively to support his argument that the defense did not lay the proper foundation for Williams to testify. 2013 MT 79, 369 Mont. 332, 298 P.3d 396. The question presented in *Jay* was whether expert testimony on partial complex seizures was relevant and thus admissible. *Jay*, ¶¶ 30-31. Jay sought to introduce the expert's testimony to support the possibility that a seizure caused the car accident because of "the unexplained nature of [Jay's] driving." *Jay*, ¶ 26. Jay had told medical providers immediately after the accident, however, that he did not have a history of seizures. *Jay*, ¶ 9. Because Jay failed to develop an "evidentiary connection" between seizures and his driving, we upheld the district court's ruling that the expert's testimony was not "connected to the facts of the case [and] could well serve to confuse the jury." *Jay*, ¶ 31; *see also Cottrell*, 261 Mont. at 302, 863 P.2d at 385 (holding that the plaintiff failed to establish a sufficient factual foundation for the expert's opinion on apportionment of personal injuries at the time of trial when the expert failed to examine or speak to plaintiff, failed to consult plaintiff's treating physicians, and was completely unfamiliar with an injury material to his testimony).

¶29 By comparison, in *Hart-Anderson v. Hauck*, the investigating officer, who had been a police officer for fourteen years, was not an eyewitness to the accident but had interviewed the parties involved and observed the scene, vehicles, and road conditions

shortly after the accident occurred.  239 Mont. 444, 448, 781 P.2d 1116, 1118 (1989).  At trial, the district court overruled the defendant's objection for lack of foundation when counsel asked the officer to opine on the cause of the accident.  *Hart-Anderson*, 239 Mont. at 448, 781 P.2d at 1118.  This Court upheld the district court's determination, concluding that the officer

> could assist the trier of fact on the issue of causation. He had extensive experience in these types of investigations and an adequate foundation was presented for his testimony. Defense counsel cross-examined the officer as to the basis of his opinion. The jury is free to decide the weight to be given this testimony.

*Hart-Anderson*, 239 Mont. at 449, 781 P.2d at 1119 (citation omitted).  Our precedent reiterates, "[A]n officer with years of experience in investigating accidents can assist the jury in its determination by presenting his opinions regarding the cause of the accident." *Perdue v. Gagnon Farms, Inc.*, 2003 MT 47, ¶ 29, 314 Mont. 303, 65 P.3d 570 (citing *Hart-Anderson*, 239 Mont. at 449, 781 P.2d at 1119); *Hilsop v. Cady*, 261 Mont. 243, 249-50, 862 P.2d 388, 392 (1993); *Rude v. Neal*, 165 Mont. 520, 525-26, 530 P.2d 428, 432 (1974); *Foreman v. Minnie*, 211 Mont. 441, 445-46, 689 P.2d 1210, 1212 (1984); *Pachek v. Norton Concrete Co.*, 160 Mont. 16, 21, 499 P.2d 766, 769 (1972).

¶30     Here, Williams had been identified as an expert early in the case.  At trial, counsel laid the proper foundation to admit Williams's opinions on Murray's driving and the cause of the accident.  With ample experience in crash investigations, Williams is a qualified expert whose testimony would assist the jury in determining the facts of the case.  He timely investigated the collision, including observing the scene, speaking with Steinmetz and two

other witnesses, and taking pictures. Murray's examination established the limits of Williams's expertise and opinions. But the opinions to which Williams testified had a factual nexus and a sufficient foundation based on his investigation as the responding officer.

¶31 Crash investigation is a reliable field. *See Hart-Anderson*, 239 Mont. at 448-49, 781 P.2d at 1118-19; *Rude*, 165 Mont. at 525-26, 530 P.2d at 432. Williams was qualified in that field with years of experience and thousands of previous investigations. Williams's testimony, even if "shaky," was admissible under the Court's liberal construction of the evidentiary standard governing relevant expert testimony. *McClue*, ¶ 23.

¶32 Murray had ample opportunity to cross-examine Williams, offer contrary evidence, or otherwise undermine Williams's opinion on the cause of the collision. Murray mischaracterizes the facts when he claims that Williams admitted to having "no proof" to support his opinion. Williams made the cited statement when asked specifically whether, in his opinion, he believed Murray crossed the center line, not whether he believed Murray was careless. Murray's other arguments about the quality of Williams's investigation challenge whether Williams reliably applied his crash-investigation expertise to the facts when forming an opinion on causation. This issue was for the jury's determination and did not affect the admissibility of Williams's opinion. *Beehler*, ¶ 35 (citing *Harris*, ¶ 36); *McClue*, ¶ 16; *Clifford*, ¶ 28. The District Court did not abuse its discretion when it concluded that Williams's opinion on the cause of the collision was relevant, had sufficient factual foundation, and was admissible.

¶33    *3. Did the District Court abuse its discretion when it refused to admit videos taken weeks after the crash intended to demonstrate traffic conditions and flow at the crash site?*

¶34    A district court has wide latitude in determining whether to admit demonstrative evidence and will not be reversed unless its ruling constitutes manifest abuse of discretion. *Henricksen*, ¶ 83 (citing *Palmer by Diacon v. Farmers Ins. Exch.*, 233 Mont. 515, 523, 761 P.2d 401, 406 (1988)).  Demonstrative evidence is admissible if it "supplement[s a] witness's spoken description of transpired events, clarif[ies] some issue in the case, and [is] more probative than prejudicial."  *State v. Ingraham*, 1998 MT 156, ¶ 94, 290 Mont. 18, 966 P.2d 103 (citation omitted).  To be reliable, a video must be "accurate and relevant" and show "a true representation of the scene at the time in question or any difference [can be] explained."  *Palmer*, 233 Mont. at 524, 761 P.2d at 406-07 (citations omitted).  A district court may exclude demonstrative evidence when it is materially different from the circumstances at the time in question.  *Leary v. Kelly Pipe Co.*, 169 Mont. 511, 517, 549 P.2d 813, 817 (1976) (upholding the district court's exclusion of demonstrative pictures because they depicted different trucks loaded differently from those at issue in the case); *State v. Sharbono*, 175 Mont. 373, 390-91, 563 P.2d 61, 71 (1977) (upholding the district court's exclusion of videos involving an experiment with different, smaller vehicles from those in the accident).  Even if relevant, a district court may exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  M. R. Evid. 403.

18

¶35 Before trial, Murray sought to pre-admit two videos of the crash-site that his father had taken a few weeks after the collision.[2] Murray offered that, though his father was not a witness to the accident, he was familiar with the intersection and could testify that the videos depicted a "substantially similar circumstance" as on the day of the collision. Murray argued that the videos were relevant to understanding the traffic conditions around the exit of the Goodwill parking lot. Steinmetz countered that the videos were inadmissible because they were irrelevant and placed an improper focus on the conduct of non-parties who were not present at the time of the accident. The District Court reasoned that there was an insufficient foundation to admit the videos, as Murray's father was not present when the accident occurred and the videos were taken at a different time. The court denied Murray's request to admit the videos. It explained:

> I don't know if the cars [at the time of the collision] were moving, or if they were stopped, or exactly where they were, or how far out from the side of the road they were, or if there was other traffic coming down the other way on Simmental, or all sort of other scenarios that might indicate that the situation, when the accident occurred, was different than [the video] . . . .

¶36 Though familiar with the area, Murray's father was not a witness to the accident. Murray's father had no gauge with which to compare his videos and their differences from a true depiction of the scene at the time of the collision. The District Court did not abuse its discretion in concluding that Murray's father lacked a factual basis to explain the differences and thus ascertain the accuracy and comparable relevance of his videos. *Palmer*, 233 Mont. at 522-25, 761 P.2d at 406-08 (holding that the district court allowing

---

[2] The video files suggest the videos were taken on July 19, but the year is not specified in the record.

(1) a video demonstrating the "exact position" of the vehicle to illustrate the testimony of an eyewitness and (2) a defense-created video to impeach a defense witness was not a manifest abuse of discretion when the court policed the videos' use and provided limiting instructions to the jury).

¶37 Murray had other available evidence to accurately depict the circumstances surrounding the accident, including eyewitness testimony, the investigating officer's testimony, photos taken of the scene, and comprehensive expert testimony coupled with their demonstrative exhibits. It was within the District Court's discretion to exclude Murray's father's demonstrative videos.

¶38 *4. Did the District Court manifestly abuse its discretion when it denied Murray's motion for a new trial under M. R. Civ. P. 59(a)?*

¶39 A civil litigant may move for a new trial for reasons that "materially affected the substantial rights of the party" as enumerated in § 25-11-102, MCA. M. R. Civ. P. 59(a); *Steffensmier*, ¶ 8; *Willing*, ¶ 19. Murray raises several contentions—including those discussed above—claiming that his jury trial consisted of "irregularit[ies] in the proceedings" that prevented him from having a fair trial and that there was "insufficient evidence to justify" the District Court's decisions. Section 25-11-102(1), (6), MCA. We review a district court's refusal to grant a new trial for manifest abuse of discretion. *Steffensmier*, ¶ 8. A manifest abuse of discretion is "obvious, evident, or unmistakable, and significant enough to materially affect the substantial rights of the complaining party." *Steffensmier*, ¶ 8 (citation omitted).

**Expert Erickson's Rebuttal Testimony**

¶40 On direct examination, defense expert Mark Erickson testified about the methods he used to determine Murray's speed at the time of the collision. In response to testimony from plaintiff's expert Harbinson about his use of the vault method to estimate Murray's speed, Steinmetz asked Erickson why he did not use that method.[3] Murray objected to Erickson's testimony on the grounds that the topic was not disclosed as required by the parties' stipulated scheduling order. The District Court overruled. Erickson explained that he did not use the vault method because the distance of the rider's travel involved a lot of variables, including colliding with the handlebars or other obstructions, which made accurate calculations of speed impossible. On cross-examination, Murray's counsel asked Erickson additional questions about the vault method.

¶41 The District Court considered and then rejected Murray's request for a limiting instruction on Erickson's contested testimony. Later, in its order denying Murray's motion for a new trial, the court concluded that Murray waived his objection when he cross-examined Erickson on the vault method. On appeal, Murray argues that he was given no option but to attempt to remedy Erickson's objected-to testimony through cross-examination.

¶42 M. R. Civ. P. 26 governs the rules of discovery. Relevant here, parties may request the disclosure of experts and the subject matter for which they are expected to testify at trial. M. R. Civ. P. 26(4). When a party requests expert disclosures, the responding party

---

[3] The vault method involves calculating a motorcyclist's speed by how far the rider is thrown or vaulted from the motorcycle.

must identify the expert, the "substance of the facts and opinions to which the expert is expected to testify," and a "summary" of the grounds for those opinions. M. R. Civ. P. 26(4). The purpose of M. R. Civ. P. 26 is to "eliminate surprise and to promote effective cross-examination of expert witnesses." *Hawkins v. Harney*, 2003 MT 58, ¶¶ 25-26, 314 Mont. 384, 66 P.3d 305 (citation omitted) (holding that a 20-line expert disclosure on the substance of his testimony, though brief and not preferred, provided opposing counsel with sufficient information to effectively cross-examine the witness); *see also Scott v. E.I. Dupont DeNemours & Co.*, 240 Mont. 282, 286-87, 783 P.2d 938, 941 (1989). A district court should evaluate the adequacy of disclosure in the light of M. R. Civ. P. 26's underlying purpose. *Sharbono v. Cole*, 2015 MT 257, ¶ 12, 381 Mont. 13, 355 P.3d 782 (citing *Hawkins*, ¶ 24).

¶43 Here, a stipulated scheduling order required that the parties simultaneously disclose expert witnesses, supplement disclosures when necessary, and disclose rebuttal expert witnesses "if the evidence [was] intended solely to contradict or rebut evidence on the same subject matter identified by another party." Steinmetz's expert Erickson provided an analysis of Murray's speed, assessing vehicle damage, roadway markings, and post-impact vehicle movements. Erickson disclosed that he calculated the speed of the vehicles using the evidence-constrained vehicle trajectories. Steinmetz supplemented Erickson's disclosure two weeks later with a detailed description of his methodology and the underlying data on which he relied in developing his opinion. Murray disclosed Steve Harbinson as a primary and rebuttal expert witness. Harbinson's disclosures explained that

22

he calculated Murray's speed using different methods, including the Rich Vault Method; the Ogden formula; and a momentum analysis, which he identified as similar to Erickson's method.[4]

¶44    On direct examination in Murray's case-in-chief, Harbinson provided greater detail on the methods he employed to calculate Murray's speed. But he also spent considerable time criticizing Erickson for not using the vault method. He testified that Erickson's method was inappropriate because Steinmetz side-swiped Murray, and a momentum analysis was accurate only when two objects hit close to the center of the mass, presenting "a true . . . T-bone collision." Harbinson added that Erickson's momentum analysis was particularly ill-suited for motorcycle accidents because of the differences between passenger vehicle tires and motorcycle tires and the potential that the motorcycle may have skidded on its side. Harbinson concluded that without use of the vault method, Erickson's calculations presented inevitable inaccuracies.

¶45    Erickson testified for the defense to support his reasoning for employing his methods over others for calculating speed. He did not mention Harbinson or make rebuttals to his conclusions, attesting only that in his opinion, the vault method more likely than not would present inaccurate calculations. Considering that Harbinson was aware of Erickson's method and testified at trial why the vault method was superior to Erickson's, testimony explaining why Erickson did not prefer that method for calculating speed was

---

[4] A momentum analysis involves using the angle of the vehicles as they came together and departed to estimate the speeds of the vehicles.

no surprise. As defense counsel explained in responding to Murray's objection, the testimony was "true rebuttal to an opposing expert."

¶46 The District Court did not abuse its discretion in admitting Erickson's testimony. We accordingly do not reach the court's ruling that Murray waived his request for a limiting instruction.

**Steinmetz's Cross-Examination on Lane Filtering**

¶47 In his omnibus motions in limine, Murray moved to suppress any testimony related to Montana's lane filtering statute codified as § 61-8-392, MCA, made effective October 2021—after the collision.[5] The District Court granted the motion. On direct examination, Murray's rebuttal expert witness, Andre Doria, testified that he was an expert in motorcycle crash forensics and was a certified motorcycle safety instructor and director of Total Control Training, a provider of advanced motorcycle training. On cross-examination Steinmetz began to question Doria about his motorcycle training experience. Murray objected to the inquiry as beyond the scope of direct examination, which the court overruled. Steinmetz continued to ask about Total Control Training's recommendation that a motorcyclist, when passing stopped vehicles, travel at a speed no greater than ten miles per hour.

---

[5] Montana's lane filtering statute allows two-wheel motorcycles to overtake another vehicle within the same lane and traveling in the same direction if the other vehicles are stopped or moving less than ten miles per hour, and the road is wide enough to pass safely. The motorcycle must pass at speeds no greater than twenty miles per hour and in a reasonable and prudent manner. Section 61-8-392, MCA.

¶48 In his Rule 59 motion and on appeal, Murray argues that the colloquy allowed Steinmetz to indirectly argue lane filtering standards. The District Court found the line of questioning germane to the central issues of the case and within the scope of cross-examination. The District Court denied Murray's motion for a new trial on this basis.

¶49 Generally, M. R. Evid. 705 allows a party to cross-examine an expert witness on the basis of their opinion to call into question whether the opinion is "founded on sufficient data" and to "guard against unwarranted opinions." *Clark v. Bell*, 2009 MT 390, ¶ 22, 353 Mont. 331, 220 P.3d 650 (citations omitted). Cross-examination is an "essential safeguard against unreliable or inaccurate expert opinion[s]." *Breuer v. State*, 2023 MT 242, ¶ 30, 414 Mont. 256, 539 P.3d 1147 (citation omitted). Consequently, an adverse party is given wide latitude to impeach the "truth, accuracy, credibility, or reliability of an expert opinion by cross-examination regarding the scope and depth of the expert's relevant knowledge, experience, or expertise." *Breuer*, ¶ 30 (citations omitted); *Clark*, ¶ 22 (citing *Green v. Hagele*, 182 Mont. 155, 159, 595 P.2d 1159, 1161 (1979)). A district court is granted broad discretion in determining the extent and scope of cross-examination. *United Tool Rental, Inc. v. Riverside Contracting, Inc.*, 2011 MT 213, ¶ 23, 361 Mont. 493, 260 P.3d 156 (citations omitted). A witness is open to cross-examination "on any subject raised or fact stated on direct examination." *United Tool Rental*, ¶ 23 (citation omitted); *see also* M. R. Evid. 611(b)(1).

¶50 Lending to his credibility and reliability as a forensic expert specializing in motorcycle collisions, Doria added during direct examination that he was a certified

motorcycle safety instructor. Once Doria mentioned these credentials, it was within the District Court's discretion to allow questioning on the subject. The subject of Total Control Training's safety recommendations for motorcycle travel was included within Doria's role as motorcycle safety instructor and director of that company. Though also codified in California's vehicle code as governing lane splitting, Total Control Training promoted the 10-mile-per-hour guideline as a separate recommendation, applicable to all motorcyclists passing stopped traffic in the same lane. Neither Steinmetz nor Doria mentioned § 61-8-392, MCA, whose provisions differ in substance from Total Control Training's safety recommendations.

¶51 The standard of care a motorcyclist must take to safely maneuver around stopped vehicles while in the same lane was germane to assessing the parties' negligence in this case. It was within Steinmetz's scope of cross-examination to impeach Doria on his touted experience and expertise. Though the principal purpose of Doria's testimony was to rebut Erickson, Doria was open to cross-examination on Total Control Training safety recommendations as a subject within the ambit of his testimony on direct examination. Those recommendations are distinct from Montana's lane filtering law, and Steinmetz's questions were confined to Doria and Total Control Training's safety guidelines when operating a motorcycle. The District Court did not abuse its discretion in allowing the testimony over Murray's motion in limine and objection.

**Jury Instruction 12**

¶52 The District Court instructed the jury on the full text of the statutes it found applicable to the parties' duties as drivers in Montana. Jury Instruction 12 provided:

> If you find that any party to this suit violated any of the following laws, then that party is negligent. You should then determine whether that negligence was a cause of the plaintiff's injury.
> Montana Code Annotated § 61-8-326. No-passing zones:
>
> (1) The department of transportation and local authorities may determine those portions of a highway in their respective jurisdictions where overtaking and passing or driving to the left side of the center of the roadway would be especially hazardous, and they may by official traffic control devices on the highway indicate the beginning and end of these zones. When the official traffic control devices are in place and clearly visible to an ordinarily observant person, an operator of a vehicle shall obey the directions of those devices.
>
> (2) [W]here official traffic control devices are in place to define a no-passing zone as set forth in subsection (1) an operator of a vehicle may not drive on the left side of the center of the roadway within the no-passing zone or on the left side of a pavement striping designed to mark the no-passing zone throughout its length.
>
> Montana Code Annotated § 61-8-343: Vehicle entering roadway from private road or driveway.
>
> The operator of a vehicle about to enter from a private road or driveway shall yield the right-of-way to all vehicles approaching the roadway.

Section 61-8-343, MCA, applicable to Steinmetz, prescribes the duty of a vehicle entering a roadway to yield to oncoming vehicles; and § 61-8-326, MCA, applicable to Murray, prohibits crossing the centerline in a no-passing zone.

¶53 A district court has broad discretion in formulating jury instructions. *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904 (citation

27

omitted). We review jury instructions for their connection to the evidence introduced, *Murphy Homes, Inc v. Muller*, 2007 MT 140, ¶ 74, 337 Mont. 411, 162 P.3d 106, and in "their entirety[,] in order to determine if they fully and fairly instruct the jury on the law applicable to the case." *Peterson*, ¶ 22 (citation omitted). A party claiming error has the burden of showing prejudice. *Peterson*, ¶ 22. Prejudice "will not be found if the jury instructions in their entirety state the applicable law of the case." *Peterson*, ¶ 22 (citation omitted). This Court has "long upheld jury instructions [that] reiterat[e] statutory language." *State v. Himes*, 2015 MT 91, ¶ 42, 378 Mont. 419, 345 P.3d 297 (citation omitted).

¶54 Murray asserted in his Rule 59 motion and again on appeal that § 61-8-326(1), MCA, is not a legal standard, but an irrelevant directive to authorities. He argues its inclusion may have led the jury to believe that the section of roadway where Murray allegedly crossed the centerline was deemed by authorities to be "especially hazardous." Section 61-8-326(1), MCA.

¶55 As the parties settled jury instructions, Murray objected to the inclusion of § 61-8-326(1), MCA, in Jury Instruction 12. Steinmetz responded that the first sentence of subsection (1) provided context for the standard given in the second sentence of that subsection. The District Court agreed with Steinmetz, concluding that including the entirety of the two statutes at issue in a single instruction gave a clearer explanation of the applicable law.

¶56 Instruction 12 gave the jury a complete and accurate statement of the laws applicable to both parties' duties when operating their vehicles at the time of the collision. The inclusion of § 61-8-326(1), MCA, was a fair statement of the law given the evidence introduced. An eyewitness testified that Murray crossed the centerline. The District Court thoughtfully regarded the jury's comprehension of the law as applied to the facts when it concluded that the first sentence provided helpful background for understanding the legal standards set forth in the second sentence of subsection (1) and in subsection (2) of § 61-8-326, MCA. "We regularly uphold instructions that mirror the language of a statute on applicable law." *Vancos v. Mont. Dep't of Trans.*, 2024 MT 30, ¶ 30, 415 Mont. 187, 543 P.3d 605 (internal brackets omitted; internal citations omitted) (citing *State v. Hudson*, 2005 MT 142, ¶ 21, 327 Mont. 286, 114 P.3d 210; *Himes*, ¶ 42). Murray's argument ignores Jury Instruction 5, in which the court instructed the jury that it was not to single out a certain point of law but to regard the order of the instructions insignificant and consider the instructions "in light of all others." Review of Jury Instruction 12 in its entirety and the jury instructions as a whole demonstrate that the jury was fully and fairly apprised of the law applicable to this case. We find no abuse of discretion.

¶57 Murray also raises a cumulative error argument. Because Murray has not established any individual errors, we will not address this argument. *See Estate of Frazier v. Miller*, 2021 MT 85, ¶¶ 38-41, 404 Mont. 1, 484 P.3d 912. The District Court's challenged rulings in Murray's Rule 59(a) motion for a new trial employed conscientious judgment and reasoned consideration. Those rulings were based on sufficient, supporting

evidence and provided no trial irregularities materially affecting Murray's substantial rights. The District Court's ruling on Murray's motion for a new trial does not present an abuse of discretion that is evident, obvious, or unmistakable and therefore was not a manifest abuse of discretion.

## CONCLUSION

¶58 The District Court properly denied Murray's motion for partial summary judgment, concluding that a persisting dispute existed on the material facts relevant to Steinmetz's duty to yield and Murray's relative conduct at the time of the accident. At trial, it was within the Court's discretion to allow crash investigator Williams to testify to his opinion about the collision's cause. It also was within the District Court's discretion to exclude videos taken of the scene weeks after the collision for lack of foundation. As a final matter, we find no other error in the issues raised in Murray's motion for a new trial and conclude that the District Court's denial was not a manifest abuse of discretion. Its judgment on the verdict is affirmed.

/S/ BETH BAKER

We Concur:

/S/ KATHERINE M. BIDEGARAY
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE